WARD v. ST. VINCENT'S HOSPITAL OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 16, 1903.)

1. HOSPITAL—CONTRACT TO FURNISH NURSE—AGENCY—INSTRUCTION—LAW OF THE CASE.

In an action against a hospital for breach of an alleged contract to furnish a competent nurse to plaintiff, a patient, it was held on appeal that on the facts then presented it was for the jury to say whether a nun, one of those in charge, had authority to make the contract. Held, that

on a retrial, the facts being substantially the same, it was error to refuse the hospital's instruction that, if plaintiff received no more than the personal assurance of the nun that a competent nurse would be furnished, then there was no contract.

2. SAME—COMPETENCY OF NURSE—EXPERT WITNESS—QUALIFICATION.
It was error to refuse a physician's evidence as to the nurse's competency, he having testified to familiarity with her work in a certain case of his.

3. SAME—PREVIOUS CONDUCT OF NURSE—ADMISSIBILITY OF EVIDENCE.
Plaintiff claiming injury from the improper application of a hot-water bottle, it was error to exclude questions asked the nurse herself whether, in attending another patient, she had had exclusive charge of the application of hot-water bottles, to show her competency.

4. SAME—CONDITION OF WATER BOTTLE.
It appeared that the hot-water bottle which burned plaintiff had been placed in the bed to be occupied by her, during her surgical operation, by another nurse, and that the witness, having accompanied plaintiff to her room after the operation, removed the bottle to the floor, and afterwards replaced it in the bed. *Held*, that it was error to exclude questions as to how long the bottle remained on the floor, and whether, when witness took it up again, it burned her hand.

Appeal from trial term, New York county.

Action by Helen D. Ward against the St. Vincent's Hospital of the City of New York. From a judgment for plaintiff, entered on a verdict, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Austen G. Fox, for appellant.
Abram I. Elkus, for respondent.

McLAUGHLIN, J. This action was brought to recover damages for the breach of an express contract. This was determined upon a former appeal to this court. 39 App. Div. 624, 57 N. Y. Supp. 784. The terms of the contract, according to the allegations of the complaint, are, in substance, that the defendant, for a specific consideration, agreed to furnish the services of a skilled and experienced nurse to the plaintiff while she was undergoing a surgical operation and recovering therefrom in defendant's hospital. The breach alleged is defendant's failure to assign such nurse, and that the one which it did assign, by reason of her inexperience and lack of skill, placed an unprotected rubber bag, filled with very hot water, against one of the plaintiff's legs immediately after the operation, and while she was under the influence of ether, and she was thereby severely burned and seriously injured. The fact that the plaintiff was burned and injured was not denied, but the existence of the contract and the breach of it were, and these are the principal issues presented at the trial, which resulted in a verdict for the plaintiff, upon which the judgment appealed from was entered.

It seems unnecessary to set out at length the facts established at the trial, inasmuch as they are quite similar to those presented on a former trial, and are stated quite fully on a previous appeal. 65 App. Div. 64, 72 N. Y. Supp. 587. It is sufficient to say that there

was a sharp conflict in the testimony offered by the respective parties upon both of the issues involved. As to the existence of the contract, the plaintiff testified, in substance, and she was corroborated by her sister, Mrs. Howland, that when she went to the hospital she was informed by Sister Ignatius, one of the Sisters of Charity there in charge, that the price of an experienced trained nurse was $3 per day; that they had 18 young ladies in the hospital, and they would provide her with the best; to which the plaintiff replied: "That is satisfactory. That is all right. Send me the best, and do for me what you have agreed and promised to do, and then I will leave the selection of the nurse to you." While on the part of the defendant testimony was given to the effect that Sister Ignatius had no authority to make any arrangement with the plaintiff which was binding upon the defendant, or which would impose upon it a liability resulting from the selection of the nurse. As an original proposition, I should very much doubt whether Sister Ignatius, giving to the plaintiff's testimony all that could be claimed from it, had the power to make the contract alleged, even if the defendant itself—a charitable institution—could have done so. Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; Gooch v. Association, 109 Mass. 558; McDonald v. General Hospital, 120 Mass. 432, 21 Am. Rep. 529; Benton v. City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436; Perry v. House of Refuge, 63 Md. 20, 52 Am. Rep. 495; Powers v. Homeopathic Hospital (C. C.) 101 Fed. 896; Joel v. Women's Hospital, 89 Hun, 73, 35 N. Y. Supp. 37; Van Tassell v. Eye & Ear Hospital (Sup.) 15 N. Y. Supp. 620. The law, however, has been settled otherwise by this court (39 App. Div. 624, 57 N. Y. Supp. 784), and that is now the law of the case. All that was there held, however, was that, upon the facts as then presented, it was a question for the jury to say whether Sister Ignatius acted within the scope of her authority in making the contract alleged. Under this rule it was for the jury to say, upon the facts presented at the last trial, whether Sister Ignatius acted within the scope of her employment in making the contract, and the jury should have been so instructed, and, if I am right about this, then the court erred in refusing, at defendant's request, to give the following instruction to the jury, viz.:

"That, if the jury find as a fact that the plaintiff received no more than the personal assurance of Sister Ignatius, then there was no contract on behalf of the defendant, and the jury must render a verdict for the defendant."

If the jury had found that the plaintiff only received the personal assurance of Sister Ignatius, then no one would seriously contend that the defendant was liable to respond in damages because the assurance had not been carried out; in other words, if Sister Ignatius had no power or authority to bind the defendant, and what she did amounted only to a personal agreement on her part, then the defendant was in no way legally obligated to make good damages sustained by reason of the failure of Sister Ignatius to do what she had agreed to.

This brings us to a consideration of the second issue involved, viz., whether or not there was a breach of the contract,—assuming one to have been made by the defendant; and here there was also a sharp conflict in the testimony offered by the parties. The testimony on the part of the plaintiff tended to show that the nurse assigned—Miss Kinney—was not an experienced trained nurse in any sense; that she was only a pupil, pursuing a course of study in the hospital, and for which she was paid a small stipulated sum in addition to her board; while, on the other hand, the testimony offered on the part of the defendant tended to show that she had had previous experience in attending surgical cases, and had given entire satisfaction upon such occasions; that she had been previously instructed, while in defendant's hospital, by a competent teacher, and especially in the use of hot-water bags when applying them to patients, and that she had had practical experience in the use of such bags. The defendant produced a physician who testified that immediately prior to the time the plaintiff was injured he had a patient in a private room in the hospital, upon whom he performed a serious operation; that Miss Kinney was the nurse who had charge of such patient, and that he had occasion to and did observe the way in which she performed her work; that she had occasion to use hot-water bottles upon such patient from time to time. He was then asked the following question: "Q. Doctor, from what you saw of Miss Kinney and the manner in which she performed her duties, was she, in your opinion, an ordinarily competent and skillful nurse?" This was objected to, and the objection sustained. I think this was error. The witness had had daily opportunity of observing the work done by the nurse. He saw how she did it, and was, therefore, qualified to say whether, in his opinion, she was a skillful and competent nurse. The necessity for opinion evidence arises whenever it is impossible to state to the jury all of the facts which are essential to enable it to form an accurate judgment. Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810. Whether or not one be a skillful and competent nurse necessarily depends upon many facts, all of which, from the very nature of things, it is impossible to lay before a jury, and for that reason a physician who has the personal charge of a patient, and who daily sees the manner in which a nurse performs her work over that patient, is competent to express an opinion, and it hardly seems necessary to cite any authorities to that effect. Miss Kinney, the nurse, was also produced as a witness, and, after detailing at some length the instruction she had received, prior to the plaintiff's injury, in the use of hot-water bags, the practical experience she had had in their use, the fact that she had attended patients for certain physicians, the length of time she had been employed, she stated that she had exclusive charge of a patient for either Dr. Lusk or Dr. Lewengood, and while she had charge of that patient she had occasion to use hot-water bottles. She was then asked: "Q. Did any one else have charge of putting hot-water bottles upon this lady other than yourself?" This was objected to, and the objection sustained. She was also asked: "Q. Did you do it yourself, or did you do it under the immediate direction of some one else?" This was also objected to,

and the objection sustained. I think both inquiries were pertinent, and the court should have permitted her to answer them. The practical experience which Miss Kinney had had was a proper fact to be considered by the jury as bearing upon the question of whether the defendant had performed its contract—assuming one to have been made—to furnish a skillful and competent nurse. That she had previously taken charge of a patient, and while so taking charge had applied hot-water bottles without the aid, assistance, or advice of others, went not only to her knowledge of the use of hot-water bottles, but also to her competency and skill as a nurse. It certainly was a fact which the jury could consider in determining whether she had the proper skill and training to enable her to use, with safety, bags filled with hot water.

I am also of the opinion that the court erred in sustaining objections to two other questions put to this same witness. In this connection it appeared that the witness accompanied the plaintiff to the operating room, and there remained with her while the operation was being performed. In the meantime another nurse prepared the bed in which the plaintiff was to be put after the operation had been performed, and put in it a hot-water bag. When the witness returned with the plaintiff to this room, she found the hot-water bag in the bed, and took it out, and placed it upon the floor. This is the bag which she subsequently took from the floor, placed in the bed, and which burned the plaintiff. After she had stated the foregoing facts, she was asked: "Q. About how long had the hot-water bottle been on the floor, * * * after you put it there, before you took it up to apply it to Miss Ward?" This was objected to, and the objection sustained. She was also asked: "Q. State whether or not the hot-water bag burned your hand at the time." This was also objected to, and the objection sustained. Both of these questions were proper. Answers to them bore directly upon the question as to whether the witness erred in judgment, by reason of lack of training and skill, in placing the hot-water bag next to the plaintiff's leg, or whether it was a thoughtless or careless act upon her part. If the latter, no liability attached, and it certainly was for the jury to say which it was, after a due consideration of all the testimony that could be presented bearing on that subject. The least that can be said is that it was some evidence, proper for the jury to consider in determining whether Miss Kinney were a competent and skillful nurse; and, being so, defendant was entitled to have the question answered. Exceptions were taken in each instance, and, it seems to me, they were well taken.

There were other errors assigned to the rulings of the court, which would require very serious examination if their consideration were necessary now to a determination of the appeal before us. Several of these relate to the refusal of the court to charge, in one form or another, that if, prior to the time the plaintiff was injured, the nurse assigned had shown herself to be ordinarily skillful and competent, she was not proved to be either incompetent or lacking in skill by the single act which caused the plaintiff's injury. This seems to be the settled rule (Baulec v. Railroad Co., 59 N. Y. 356, 17 Am. Rep.

325); but it is, however, unnecessary to determine whether it is or not, inasmuch as it is not probable upon a retrial the question will again be raised.

The judgment and order appealed from must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur; VAN BRUNT, P. J., in result.