Hillsborough,
Jan. 5, 1932.

MARY McQUAID *v.* NICHOLAS MICHOU.

*Hurley & Connor* (*Mr. Connor* orally), for the plaintiff.

*Timothy F. O'Connor* and *Myer Saidel* (*Mr. Saidel* orally), for the defendant.

ALLEN, J. I. In a prior suit between the parties the plaintiff charged the defendant with negligence in his performance of the contract to effect a cure, for breach of which this action is brought, and the defendant prevailed therein. It is claimed for various reasons that this action was thereby barred. None of the reasons appear sufficient.

It is argued that the promise to cure was an issue determined in the prior suit. While it may have been an issue, it was only a collateral one, not essential as an element of the cause of action. It was not matter to be pleaded (*Chesley* v. *Dunklee*, 77 N. H. 263), and hence any finding on the issue was not *res adjudicata.* The prior suit was for improper treatment. This action is for failure of a promised result of treatment. The plaintiff's failure to prove liability for malpractice in the prior suit does not perforce disprove the promise to cure. If in that suit evidence of the promise to cure became relevant and was received, merger or identity of the actions does not follow. Duplication of the evidence in them does not make them the same, or show that they are not separable and based on distinct grounds of liability. It is true that the defendant's conduct which was under test in the prior suit is again considered in this action. But his liability in this action depends, not upon the character of his conduct, but upon his agreement for its results. How he acted is now only of collateral bearing, while in the prior suit it was only of collateral bearing what he agreed to do. The verdict in the prior suit shows either that the defendant's treatment of the plaintiff was proper and skilful, or that the plaintiff or both she and the defendant were in fault, but it does not show what his undertaking was as to the outcome of the treatment.

There is not here a case of election between inconsistent remedies for rights growing out of a single transaction. When the claim is of new and distinct impression and does not result in a change of position producing a conflict with a prior claim, there is no estoppel to bar it. *Gehlen* v. *Patterson,* 83 N. H. 328, 330, 331.

The claim of improper treatment was not an election barring a claim of proper treatment barren of agreed results. While the plaintiff in this action may not now claim the treatment she received to be a ground of liability, she may say that it did not do for her what was promised. The prior action establishes no estoppel against this one because remedy for unskilful treatment is compatible with remedy for unsuccessful treatment. If the defendant had promised to pay the plaintiff a stipulated amount if he did not cure her, the defence that he had used due care and skill would be of no avail. And the contract here falls short of such a promise only in its deficiency of provision for liquidated damages. Moreover, since the judgment in the prior action is indeterminative between failure of proof of improper treatment and proof of the fault of the plaintiff or of both parties, evidence to show such treatment may now be received, not as a ground of liability, but for its bearing on the promise to cure. If the promise to cure was broken because of the negligent character of the treatment, the plaintiff is not estopped by the judgment from showing it. Whatever evidence is relevant on the issues of the making and the breaking of the promise, is in no respect limited or affected by the judgment. The remedies are cumulative, and not alternative.

It may be that if the prior suit had been generally for breach of the contract of service, all issues litigable in it would be settled. *Chesley* v. *Dunklee, supra.* But the prior action was limited to a claim of negligence. If the negligence is regarded as a breach of the contract, it is a distinct item of breach. While the outcome of the suit barred a later action for that breach, it did not bar one for failure of other terms of the contract. The election to sue in tort instead of on the contract was effective to bar later action on the contract for its breach in committing the tort, but not to bar action for other breaches. Different liabilities under a contract or as its outgrowth may give rights to separate actions when the liabilities are not alternative. *Robinson* v. *Crowninshield,* 1 N. H. 76; *Moulton* v. *Libbey,* 15 N. H. 480; *Perham* v. *Lane,* 76 N. H. 580.

II. Upon the exception to the refusal of a directed verdict, the evidence is said to show the mutual understanding of the parties that a cure was impossible. Without considering in this connection the

effect of such an understanding, the evidence of it is not at all conclusive. The plaintiff testified to her belief that the promise of a cure would be fulfilled and that she took the treatment the defendant gave her in reliance and faith upon it. This testimony being adopted, it is not important that the defendant believed or knew there was no chance of a cure. If he agreed to cure, and the plaintiff thought he would, he is held, although he knew he could not.

Further claim is made that it was the plaintiff's fault that she did not take the full treatment, and that as the defendant's promise was dependent upon it, she committed a substantial breach of her part of the contract. The evidence authorized a conclusion that she did not complete the treatment because it affected her health too seriously. To meet this, the point is taken that the verdict in the prior suit determined this issue of her fault against her. The point is defective. The verdict in the prior suit neither exonerated the defendant from blame for the treatment, nor did it show the plaintiff to be in fault for the results of the treatment. Responsibility for the results was not necessarily hers merely because the verdict was for the defendant. Neither party may have been at fault. The issue of her fault must therefore be regarded as unconcluded by the prior suit, and the situation now is that although the defendant's treatment whether or not wrongful, was so severe in its effects that the plaintiff was justified in refusing to go on with it.

Moreover, the defendant testified that he knew the plaintiff's disease was incurable when he undertook to treat her, it being his position that he agreed only to help and better her condition. Since he admits that the full treatment would not cure, he may not rely on a term of the engagement full performance of which by the plaintiff would still leave his promise to cure unfulfilled. The treatment having no curing efficacy, the plaintiff's refusal to go on with it cannot be regarded as a breach of such importance as to justify the defendant in rescinding the contract or to relieve him from further liability thereon.

Argument is advanced that contracts to cure are against public policy. The reason suggested is that their enforcement tends to dissuade a doctor from encouraging his patients and giving them hope as an important aid to their improvement or recovery, in the fear that his words will be taken as a promise. The line between a promise and an opinion is not so narrow and shadowy that language may not be well chosen to express one in clear distinction from the other, and it is a simple matter for a doctor to make it definite that he guarantees no good results. Moreover, if the promise were held illegal, a patient

ignorant of its illegality would be misled in placing reliance on it, while if he were aware of its lack of binding force, his knowledge would tend to prevent confidence in it and the gain of freedom of statement would be lost in its known irresponsibility. The proposed policy is not perceived to have any healing value sufficient to demand its adoption.

III. The defendant excepted to evidence, the charge, and the denial of requested instructions, in relation to damages. The exceptions may be considered together as presenting generally the issue how far the ill effects, both physical and pecuniary, sustained by the plaintiff from the treatment are an element of damage.

The rule of damages in such cases as this is expounded in *Hawkins* v. *McGee*, 84 N. H. 114. It gives as compensation only the difference between the values of the condition promised and the actual condition, including incidental consequences fairly subject to contemplation by the parties when the contract is made. As the case holds, a plaintiff's suffering incident to treatment does not enter into this difference of value nor is it a separate incidental consequence to be given allowance. It is a part of the price the plaintiff is ready to pay for the agreed result. He may not have a return in damages of the price and also receive what was to be obtained for the price.

The actual condition may include suffering as an attendant feature of it, and hence such suffering may be shown. The suffering of an uncured condition is a factor in the estimate of its value. But unless relevant to show such suffering, suffering incident to the treatment would appear to be without bearing in the computation of damages.

It is claimed here, however, that the suffering incident to the treatment was greater than that contracted for, and that as a term of the contract the defendant agreed that it would be confined within certain limits. There was evidence that the treatment was to consist of five injections to be given a week apart and that at the end of the period, according to the defendant's promise, the cure would be accomplished. And there was evidence that the effect of the injections was so serious that the plaintiff could take only three of them. The defendant's claim that his statements relating to the severity and duration of the treatment may be regarded only as expressions of opinion, may not be sustained. It was an issue what the terms of the contract were, and whether the defendant's statements about the character and length of the treatment were terms of the contract was as much for the jury to say, under proper instructions, as whether he agreed to cure.

It therefore might be found that the plaintiff paid a higher price for the cure than was agreed. Ordinarily, if to obtain a promised result one is obliged to pay more than the agreed price, the excess payment may be recovered as well as the loss in not obtaining the result. If the result is obtained, the overpayment is still recoverable.

It does not follow, however, that the plaintiff may have recovery on account of this excess of suffering as a special item of damage. Her condition due to the treatment would reflect and show such suffering, as practically a part of it, and enhance the difference between it and a condition of cure. While the excess of suffering would be in evidence, it would be received only to show her condition. And such suffering as an incident of her condition and widening the difference between her condition and cure, would receive allowance by reason of its inclusion in such difference.

Conceding that suffering incident to treatment and beyond the terms of the contract and suffering as a part of the actual condition following the treatment may not be in all respects the same, yet distinctions and separation between them cannot be practically made. To value the former as an item by itself, and to include the latter in the estimate of value of the actual condition, would here and ordinarily, if not in all cases, probably lead to arbitrary and excessive totals. The suffering here which was incident to treatment was the outcome of treatment. The plaintiff does not complain of the pain of administering the injections, but of the distress that followed. This distress led into her actual condition. The suffering as a whole is incapable of division into the suggested grouping for the purpose of any satisfactory and reasonable division of allowance. The parts are so connected that the suffering of condition is essentially a continuance of the suffering of treatment with the boundary line too difficult to be fairly ascertained. If allocation is in theory called for, its inexpediency is too great to undertake to carry the theory into play.

The plaintiff claims a loss of earnings and expense as a result of the suffering which she alleges it was agreed she should not sustain. This pecuniary loss would not enter into the difference between the actual and promised conditions. But it might be found to be an incidental loss which the parties, if they thought about it, might expect would be incurred if the terms of the contract limiting suffering were not fulfilled, and for which allowance should thereupon be made.

The jury were instructed that the value of the plaintiff's condition if cured over and above the value of her actual condition should be estimated, including incidental consequences to be expected and "at-

tributable to the treatment and the disease." In further direction they were told: "Such . . . suffering and inconvenience . . . as resulted from and was naturally incidental to the treatment are not elements of damage. But pain and suffering which resulted from the disease, itself, as well as the results, her present condition or any condition which has been created by the treatment may be considered."

If these instructions may be sustained by literal analysis as correctly setting forth the law, jurors would hardly gain from them a clear understanding how far and in what way the suffering entered into the assessment of damages. They did not properly limit and define the consideration of suffering as only helping to show the actual condition, and from them a juror may well have thought that some part of the suffering might be given allowance as an incidental consequence. Incidental consequences attributable to the disease and treatment were stated to be a proper matter for special allowance, and suffering as a result of the disease, if not also of the treatment, would naturally be understood from what was said following the statement as being within such consequences. Since the only incidental damage shown by the record relates to financial loss, the instructions gave the jury a wider field for the allowance of such damage than was right. At best the instructions were insufficient and confusing.

While the defendant was not entitled to the grant of his specific requests on the subject of damages, he was entitled to have the issue properly presented, and his exceptions are sufficient to preserve his rights. *Burke* v. *Railroad*, 82 N. H. 350, 361, 362; *Smith* v. *Company*, 83 N. H. 439, 450. The charge on this issue appearing to be misleading and inadequate, the verdict is set aside.

IV. An illustrative picture shown the plaintiff by the defendant when he explained his treatment to her was an exhibit in evidence. The defendant excepted to the instruction that the jury should not consider the printed matter on it. So far as appears, the plaintiff knew nothing about the printed statements. At best it had no more than collateral bearing on any issue, and clearly it might be excluded as a discretionary matter, even if also it might have been admitted. There is no presumption of prejudice in the minds of the jury when evidence is withheld from their consideration or when they are told to disregard it.

V. The court declined to rule in its instructions that the plaintiff could not recover unless she believed the defendant would cure her, or if both parties knew her disease to be incurable. Exceptions relative thereto were taken.

Expectation on the plaintiff's part that the promise would be fulfilled was not necessary to give it contractual effect. In agreeing upon the terms of the contract the minds of the parties met. When a thing is promised, it is of no consequence whether or not the promisee expects performance.

Obligations are often taken when the obligee does not expect their full or even partial observance. He may pay a price for one, considering it worth while to take the chance that the outcome may be realized in spite of his belief that it will not be. He buys, not performance, but the promise of performance, and if the promise is broken, remedy is not to be denied merely because performance was not expected when the promise was taken.

But if both parties knew the disease was incurable, then they knew that the promise could not be performed. Contracts which both parties know engage for impossibilities are void. " . . . the impossible nature of the promise shows that there was no real intention of contracting and therefore no real agreement." Pollock, Contracts, (Wald's, *ed.*) 520. As a general proposition of law, "if a man contract to do a thing which is absolutely [and obviously] impossible, such contract will not bind him, because no man can be obliged to perform an impossibility." Chitty, Contracts, (18th *ed.*) 826. "So where there is obvious physical impossibility, or legal impossibility, which is apparent on the face of the contract, the latter is void." *Jacksonville &c. Ry* v. *Hooper,* 160 U. S. 514, 527. "To bring the case within the rule of dispensation, it must appear *that the thing to be done cannot by any means be accomplished;* . . . " *Beebe* v. *Johnson,* 19 Wendell, 500, 502. "It is sometimes said that if the agreement is impossible in itself, it is void. This, however, does not seem necessarily true. Doubtless if the parties know of the impossibility they will not make such an agreement. Merely going through a form of words which they know can mean nothing, will not make a contract." Williston, Contracts, *s.* 1933.

The jury should have been instructed in accordance with these principles. If, however, the terms of the contract limited the duration and severity of the treatment, for any conditions or results of the treatment in excess of the limits there may be recovery, although both parties knew the disease was incurable. If the plaintiff knew she could not be cured, she took the treatment with some thought that it might help her. If it hurt her beyond what it was agreed it would, and if she incurred expense and loss of earnings on that account, she may claim a breach of the terms of the agreement in regard thereto,

even if the knowledge of both parties that she could not be cured made the promise to cure ineffective. As already appears, without such knowledge the damages therefor in respect to suffering would not be given allowance as an incidental consequence, but such suffering might enter into the estimate of the value of her actual condition in that situation.

VI. The exception to argument was not properly taken. No ruling upon the argument was made. *Tuttle* v. *Dodge,* 80 N. H. 304, 312; *Willette* v. *Whitney,* 82 N. H. 209, 210; *O'Dowd* v. *Heller,* 82 N. H. 387, 391; *State* v. *Davis,* 83 N. H. 435, 437; *State* v. *Hinton,* 84 N. H. 75, 81.

*New trial.*

All concurred.