(No. 36316.—)

JULIA ZOSTAUTAS, Admx. *et al.,* Appellants, *vs.* ST. ANTHONY DE PADUA HOSPITAL *et al.*—(V. P. TUMASONIS, Appellee.)

*Opinion filed November 30, 1961.*

SHERWOOD & GROEBE, and NORVILLE, WALSH & CASE, both of Chicago, (LEWIS G. GROEBE and ROBERT O. CASE, of counsel,) for appellants.

HINSHAW, CULBERTSON, MOELMANN & HOBAN, of Chicago, (OSWELL G. TREADWAY, of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an action for damages by Julia Zostautas, as administratrix, and in her own right as mother, and by John J. Zostautas, as father, for the death of their five-year-old son while undergoing a tonsilectomy, against the surgeon, anesthetist, hospital and nurse. The amended complaint, consisting of six counts, sets forth claims under the Wrongful Death Act (Ill. Rev. Stat. 1959, chap. 70, par. 1,) and for breach of contract. On motion of defendant Tumasonis, the circuit court of Cook County dismissed, on the grounds of legal insufficiency, count IV, which alleged an action for breach of contract against only the defendant surgeon. The court made its order appealable under section 50(2) of the Civil Practice Act by an express finding that "there is no just reason for delaying an appeal," (Ill. Rev. Stat. 1959, chap. 110, par. 50,) and also found that no constitutional rights of plaintiffs were infringed by the dismissal. Plaintiffs have appealed directly to this court on the ground that

the Illinois constitution was violated by construing the Wrongful Death Act as barring the common-law contract action asserted in count IV.

The controverted count IV alleges in substance that on May 4, 1957, the defendant surgeon entered into an express contract with the plaintiffs to perform a tonsilectomy upon their son with the degree of care which physicians and surgeons of ordinary skill, care and diligence would exercise under the circumstances, and plaintiffs agreed to pay defendant the reasonable value of his professional services; that, while plaintiffs have performed all conditions of their agreement, defendant breached his contract and treated plaintiffs' son in a careless manner directly resulting in his death on May 16, 1957; that as a natural and probable consequence of such breach, plaintiffs suffered sever shock and mental anguish, lapsed into a deep depression, and were compelled to expend large sums for professional medical services, and $1,000 for funeral expenses, for which damages of $125,000 each are sought.

In determining the legal sufficiency of that count on his appeal, we must resolve several questions of first impression before our court: Whether the common-law action for breach of contract lies against the surgeon where the death of the patient arose out of the breach; whether such action is barred by our Wrongful Death Act, and if so, whether such a construction violates the Illinois constitution; or, if this action or other remedy is recognized, whether mental anguish is a proper element of damages.

These questions involve not only an interpretation of legal history, but a balancing of the legal policies of protecting the public in its dealings with the medical practitioner, and of protecting the practitioner in the pursuit of his highly essential profession from the fraudulent minded.

In the development of the law the relationship of physician and patient has given rise to actions of a hybrid nature (70 C.J.S. 981; *Giambozi* v. *Peters,* (1940) 127

Conn. 380, 16 A.2d 833; *Barnhoff* v. *Aldridge*, (1931) 327 Mo. 767, 38 S.W.2d 1029), sounding in tort or in contract (74 A.L.R. 1256; 151 A.L.R. 1027; 1953 Wash. U.L.Q. 413, 416), and both theories are often advanced in alternative counts, as in the instant case. *Conklin* v. *Draper*, 241 N.Y.S. 529, aff'd 254 N.Y. 620, 173 N.E. 892 (1930); *Stewart* v. *Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957); *Hickey* v. *Slattery*, 103 Conn. 716, 131 Atl. 558 (1926).

Although these actions of malpractice and breach of contract may arise out of the same transaction, they are distinct as to theory, proof and damages. (*McQuaid* v. *Michou*, 85 N.H. 299, 157 Atl. 881 (1932); *Colvin* v. *Smith*, 92 N.Y.S. 2d 794 (1949); *Robins* v. *Finestone*, 308 N.Y. 843, 127 N.E.2d 330 (1955).) Actions in contract may be based upon an express promise by the physician, such as to perform a Caesarean section (*Stewart* v. *Rudner*), or to cure plaintiff of syphilis (*Giambozi* v. *Peters*), or to cure an illness within a specified time (*Robins* v. *Finestone*); or may be based upon the implied obligation arising out of defendant's employment as a physician to use proper skill and care (*Hickey* v. *Slattery*), or to furnish proper medical aid. (*Conklin* v. *Draper*.) In such actions liability is predicated on the failure to perform an agreed undertaking rather than upon negligence, and the damages are restricted to the payments made, the expenditure for nurses and medicines, or "other damages that flow from the breach thereof" (*Conklin* v. *Draper*), and do not include the patient's pain and suffering as in malpractice actions (*Robins* v. *Finestone*).

However, while the law is clear that a common-law contract remedy may be available to a surviving patient (*Conklin* v. *Draper*, 241 N.Y.S. 529, aff'd 254 N.Y. 620, 173 N.E. 892; *Burke* v. *Maryland*, 149 Minn. 481, 184 N.W. 32 (1921); *Kolb* v. *Berglin*, 209 Wis. 547, 245 N.W. 583 (1932); *Parrish* v. *Clark*, 107 Fla. 598, 145 So. 848; *Stewart* v. *Rudner*, 349 Mich. 459, 84 N.W.2d (1947); *Robins* v. *Finestone*, 308 N.Y. 843, 127 N.E.2d 330

(1955); *McQuaid* v. *Michou*, 85 N.H. 299, 157 Atl. 881 (1932); *Boshes* v. *Kamin*, 209 Ill. App. 508 (1918),) the law is a maze of conflicting decisions and rationalizations as to whether this action can be maintained where the physician's breach of contract causes the patient's death—which is the issue in the case at bar.

That issue depends upon whether the rule of *Baker* v. *Bolton* (1 Camp. 493 (1808),) incorporating Lord Ellenborough's celebrated dictum that "in a civil court the death of a human being could not be complained of as an injury" —which has become part of the fabric of our law (*Hall* v. *Gillins*, 13 Ill.2d 26)—applies to contract actions where death is caused by the breach, as well as to tort actions. 13 Vanderbilt L. Rev. 605.

The early English cases cited by plaintiffs (*Jackson* v. *Watson*, 2 K.B. (1909) 193; *Bradshaw* v. *Lancashire & Yorkshire Ry.*, L.R., 10 C.P. 189 (1875),) refused to apply the rule of *Baker* v. *Bolton* where the action can be framed in contract, even though the rule would have barred recovery in tort for the same conduct. Thus in the *Jackson* case the court awarded the husband damages for the loss of his wife's services after her death, along with medical and funeral expenses in an action for breach of implied warranty on canned food sold by defendant, which caused her death. The courts reasoned that the rule of *Baker* v. *Bolton* had no application to an action for breach of warranty since it was independent of the wrong, and the death of the wife was only an element in ascertaining damages, and not an essential part of the action.

In this country, with the exception of an early Connecticut case (*Crofs* v. *Guthery*, 2 Root's 90 (Conn. 1794),) the case law has followed a contrary course. The *Crofs* case and those English decisions allowing recovery for death where the action could be framed *ex contractu* have been rejected in several jurisdictions, including the United States Supreme Court. *Mobile Life Insurance Co.* v. *Brame,*

95 U.S. 754, 24 L. ed. 580 (1877); *Vittum* v. *Gilman*, 48 N.H. 416, 417 (1868); *Sherlag* v. *Kelley*, 200 Mass. 232, 86 N.E. 293 (1908); *Duncan* v. *St. Luke's Hospital*, 98 N.Y.S. 867, aff'd 192 N.Y. 580, 85 N.E. 1109 (1906); *Roche* v. *St. John's Riverside Hospital*, 160 N.Y.S. 401, aff'd 161 N.Y.S. 1143 (1916); 13 Vand. L. Rev. 605, 616; see also discussion in *Kilberg* v. *Northeast Airlines*, 211 N.Y.S. 2d 133, 139.

The Massachusetts court held in *Sherlag* v. *Kelley* that a husband could not recover for loss of his wife's society, care and comfort resulting from her death, in a common-law contract action against a physician for breach of his implied agreement to render necessary and proper medical care to the wife. The court stated that elements of damage arising from death were barred in contract actions, as well as tort actions, and allowed the husband only damages for the wife's treatment.

Similarly, the New York court in *Duncan* v. *St. Luke's Hospital* held that the common-law rule barring actions for death applied equally where the act which caused death was alleged to be a breach of an express or implied contract. Consequently, the court dismissed, for legal insufficiency, the husband's action against a hospital for breach of its contract to keep a constant watch over his mentally disturbed wife, as a result of which she was killed in jumping from the window. That interpretation of the common law was given approbation in 1916 in *Roche* v. *St. John's Riverside Hospital* (160 N.Y.S. 401, aff'd 161 N.Y.S. 1143). The court however, distinguished the *Duncan* case on other grounds, and recognized a statutory basis of liability. After reaffirming its early decision that a patient could recover in a common-law contract action against a hospital for breach of a contract to furnish a skillful and competent nurse for a stipulated sum (*Ward* v. *St. Vincent's Hospital*, 79 N.Y.S. 1004 (1903),) the court reasoned that, although such an action would not survive the death of the patient,

nevertheless, an action could be brought under the Wrongful Death Act on either a contract or tort theory. The court then explained that to maintain such a statutory action it was important to set forth the contract and its breach in order to measure defendant's liability. Recovery, however, was for the pecuniary value of the decedent's life to his next of kin, and not for damages under contract or tort rules. Under this rationale, the court sustained the sufficiency of the complaint, since it set forth a contract between the hospital and the deceased infant and his parents to guard the infant while the mother was undergoing treatment in the hospital, and alleged the breach thereof by the hospital resulting in the infant's death.

The rule promulgated in the *Roche* case, that a breach of contract causing death could be the basis of liability under the Wrongful Death Act, was further analyzed and approved by the New York Court of Appeals in *Greco* v. *S. S. Kresge Co.* 277 N.Y. 26, 12 N.E.2d 557 (1938). There it was held that a breach of an implied warranty that food was fit for human consumption constituted a "default" or "wrongful act" within the terms of the statute. In support of this interpretation the court pointed out that the distinction between torts and breaches of contract is often shadowy, so that the same facts may warrant proceeding in contract or tort; that the term "default," in the statute, is defined in Bouvier's Law Dictionary (p. 814) as "the non-performance of a duty, whether arising out of a contract or otherwise," and that the interpretation was in accordance with the statutory objective. The court explained that such death statutes were enacted to remedy the evil obtaining at common law, whereby the death of a party caused by a breach of duty ended the liability of the person responsible for the breach, and that this evil would only be perpetuated if the statute were given a narrow construction.

The *Roche* and *Greco* cases were deemed determinative precedents in *Calamari* v. *Mary Immaculate Hospital,* 155

N.Y.S. 2d 552 (1956), where it was held that the administrator of an infant who died shortly after birth from a blood condition could base his action against the hospital for failure to furnish a skilled pediatrician either on contract or tort under the Wrongful Death Act. In concluding that the motion to dismiss the contract count should be denied, the court specifically stated, "The wrongful act, neglect or default which gives rise to an action under section 130 of the Decedent Estate Law need not be based on negligence."

As originally noted, our court has not yet determined the contract liability of a physician where the patient dies as a result of the physician's breach of contract. Nor was that issue analyzed in the conflicting Appellate Court cases cited by the parties, which considered essentially the problem of whether the doctrine of charitable immunity barred contract actions against hospitals. *Armstrong* v. *Wesley Hospital,* 170 Ill. App. 81 (1912); *Mater* v. *Silver Cross Hospital,* 285 Ill. App. 437, (1939); *Wattman* v. *St. Luke's Hospital Ass'n,* 314 Ill. App. 244, (1942).

Thus, it appears from our canvass of the case law that a surviving patient can maintain a cause of action for breach of an express or implied promise against a physician, which is separate and distinct from negligence in its basis of liability and rule of damages. This action, however, with the exception of some early English and American cases, is barred where the patient dies from the breach by the criticized but established common-law rule that no action will be allowed for the death of a human being.

While this court has joined in the criticism of that common-law rule, which apparently originated from a misreading of English legal history (3 Holdsworth, History of English Law, 2d ed. 336), and has refused to expand its corollaries (*Saunders* v. *Schultz,* 20 Ill.2d 301, (1960),) nevertheless, we do not believe that a distinction should be made whereby the rule is invoked in only tort but not in

contract actions where the breach of contract causes death. Such a distinction, in addition to running counter to prevailing judicial opinion in this country, would promote grave inconsistencies in the law, in that it would permit complete recovery for death caused by the breach of a contract duty, while denying all recovery for death caused by the breach of a duty imposed by law. The tenuousness of such a distinction is apparent in these "malpractice" cases where the identical conduct of the physician may give rise to either action. Invoking such a distinction would only pay homage to the ancient "forms of action" and perpetuate formalities of pleading which our Civil Practice Act endeavored to abolish.

In our judgment the more tenable rule, and that supported by judicial authority, (*Roche* v. *St. John's Riverside Hospital; Greco* v. *S. S. Kresge Co.; Calamari* v. *Mary Immaculate Hospital,*) is that a breach of a physician's contract resulting in the death of the patient may constitute a "default" within the terms of our Wrongful Death Act. The New York cases adhering to this rule are particularly compelling since the death statute construed is similar to the Illinois Wrongful Death Act and allows recovery by an administrator where the death of the decedent is caused by a "wrongful act, neglect or default" against the person who would have been liable in an action by the decedent if death had not ensued.

While this interpretation has not yet emerged from the judicial caldron as established doctrine (*contra: Bloss* v. *Woodson Sanitarium,* 319 Mo. 1061, 5 S.W.2d 367,) it would certainly be in accordance with the objectives of the death statutes. As Justice Cardozo stated in *Van Beeck* v. *Sabine Towing Co.* 300 U.S. 342, 350, 81 L. ed. 685 (1937):

"Death statutes have their roots in dissatisfaction with the archaisms of the law * * *. It would be a misfortune

if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied."

We would be giving our Wrongful Death Act a grudging construction if we would leave remediless cases where death ensues from a physician's breach of contract, and, but for such death, the patient would have had a valid contract action against the physician. Thus, the interpretation evolved herein not only avoids creating inequitable and inconsistent refinements in the common law, but would effectuate the purport and be within the terms of our Wrongful Death Act.

In this vein we note that the Court of Appeals in construing a similar New Jersey Wrongful Death statute (*Skovgaard* v. *The Vessel M/V Tungus,* (3rd cir.) 252 F.2d 14) stated that in view of the inclusion of the word "default" in the statute, the conduct required to impose liability "is not limited to that conduct embraced in the historical concept of negligence."

Nothing at war with this conclusion is found in our opinion in *Revel* v. *Butler,* 322 Il. 337. Our rejection of the wrongful death action there was predicated only on the lack of privity between the building owner and tenant by virtue of the intervening lease arrangement.

It is therefore incumbent upon us to measure the legal sufficiency of count IV in the light of this analysis. Plaintiffs have alleged in substance a contract with defendant, and the breach thereof by defendant, resulting in the death of their son. Although this breach could not be enforcible in a common-law contract action, it could be the basis of liability under the Wrongful Death Act, since it alleges a "default" by defendant and liability to decedent had not death ensued. The fact that the contract was between plaintiffs and defendant, and not with decedent, would not affect that liability, inasmuch as decedent was a five-year-old child, and, had he survived, could have recovered damages as

beneficiary of such a contract. Moreover, in both the *Roche* and *Calamari* cases the decedents were minors—in fact new-born infants—so that the contracts were obviously made with their parents; nevertheless, the breach of such contracts was deemed the basis of the statutory liability. Since count IV refers to a common-law contract action rather than one under the Wrongful Death Act, it is legally insufficient and the trial judge properly dismissed that count. It is to be noted that count III of the complaint sets forth a claim against the defendant, Tumasonis, under the Wrongful Death Act. That count was predicated upon the negligence of the defendant surgeon, Tumasonis. The legal sufficiency of that count is not questioned in this appeal, and we have indicated that under the Wrongful Death Act an action lies against the surgeon and may be predicated on either the contract or tort theory, as either theory gives rise to a "default" under the Wrongful Death Act.

With reference to the constitutional issue, since there was no common-law remedy where death ensued as a result of a breach of contract, and since the Wrongful Death Act, as construed herein, provides, rather than abrogates, such remedy, there is no infringement of plaintiffs' constitutional rights. As stated in *Knierim* v. *Izzo, 22* Ill.2d *73, 77,* (1961), we are not required by section 19 of article II of our constitution to recognize a remedy where the legislature has already created one, even though the statutory remedy be limited as to recoverable damages.

With respect to the elements of damage recoverable, it is evident that while defendant's alleged breach of contract is the basis of liability, the damages recoverable are limited by the terms of the Wrongful Death Act. Recovery thereunder is based upon the pecuniary value of decedent's life to his next of kin. This criterion is quite different from the damages allowed in a common-law action of contract or tort if the decedent had survived. (*Roche* v. *St. John's Riverside Hospital,* 160 N.Y.S. 401, aff'd 161 N.Y.S. 1143.)

Consequently, plaintiffs' request for damages for their mental anguish must be rejected. *Stewart* v. *Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957), cited by plaintiffs, where damages for mental anguish were allowed, involved merely a common-law action for breach of contract by the surviving patient; therefore it is in no way determinative here. From this analysis of these novel questions, it was not error for the trial court to dismiss plaintiffs' count IV. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*