(No. 54308, 54373 cons.—

RONALD ELLIOTT *et al.*, Ex'rs, *et al.*, Appellants and Appellees, v. HILDA WILLIS *et al.*, Appellees and Appellants.

*Opinion filed September 30, 1982.—Modified on denial of rehearing November 24, 1982.*

Ronald N. Hanley, of Hanley, Traub & Hanley, of Fairbury, for appellants and appellees Ronald Elliott *et al.*

Costigan & Wollrab, of Bloomington, for appellees and appellants Hilda Willis *et al.*

George M. Elsener, Miles N. Beermann, and Susan L. Brody, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE CLARK delivered the opinion of the court:
On April 13, 1976, Paul Elliott was killed as a result

of a collision between the automobile he was driving and a pickup truck driven by defendant Hilda Willis. The executors of the estate filed a wrongful death action in the circuit court of McLean County pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2) against Hilda Willis and her daughter, Carol, whose truck Hilda was driving at the time of the accident. Verla Elliott, Mr. Elliott's widow, also brought suit individually for her own personal injuries.

During the conference on jury instructions the defendants tendered defendants' instruction No. 3 to the trial court. This is a modification of Illinois Pattern Jury Instruction (IPI), Civil, No. 31.07 (2d ed. 1971). It read:

"In determining 'pecuniary injuries' you may *not* consider the following factors:

1. The pain and suffering of the decedent;

2. The loss of decedent's society by the widow and next of kin;

3. The grief or sorrow of the widow and next of kin."

(Emphasis added.)

The plaintiffs objected to the language in paragraph 2. The instruction was given by the court over the plaintiffs' objection.

The jury returned verdicts awarding Verla Elliott $50,182.50 for her own personal injuries and awarded the estate $4,500 (stipulated prior to trial to be the value of Paul Elliott's car).

A judgment order was entered by the trial judge on February 20, 1979, and modified without objection on February 22, 1979. On February 23, 1979, a post-trial motion was filed by the estate requesting a trial on damages only or a new trial on all issues. A hearing was held on March 19, 1979, at which time the post-trial motion filed by the estate was denied. The estate immediately filed a notice of appeal.

On March 20, 1979, the defendants filed a post-trial mo-

tion seeking relief from both judgments. A hearing was held on March 29, 1979, and the defendants' motion was denied. Defendants filed their notice of appeal on April 10, 1979.

The appellate court on its own motion found that the defendants' notice of appeal was not timely filed and dismissed their appeal. (89 Ill. App. 3d 1144.) The appellate court agreed with the estate's assertion on appeal that the verdict was too low as a matter of law. The appellate court also found that the jury should have been instructed concerning Verla Elliott's loss of consortium. The plaintiff estate has also complained on appeal that the trial court erred in refusing to instruct the jury on loss of accumulation to the estate caused by the payment of estate taxes. The appellate court concluded that the trial court was correct in its refusal to instruct the jury concerning the estate's loss of accumulation. We granted separate petitions for leave to appeal filed by the estate and defendants.

Section 2 of the Wrongful Death Act provides:

> "Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." (Ill. Rev. Stat. 1975, ch. 70, par. 2.)

The plaintiffs had asked the trial court that the jury be instructed that they should, in assessing damages, consider the reasonable value of the society, companionship and conjugal relationship that Verla Elliott had with her husband and which she has been deprived of because of his death. The trial court refused to tender that instruction. Thus the question with which we are faced is whether loss of consor-

tium is compensable as a "pecuniary injur[y]" under the Wrongful Death Act.

The estate and defendants agree that consortium is unique to a marriage partner (*Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 162). It includes society, guidance, companionship, felicity, and sexual relations. *Dini v. Naiditch* (1960), 20 Ill. 2d 406; see *Hall v Gillins* (1958), 13 Ill. 2d 26.

*Hall v. Gillins* (1958), 13 Ill. 2d 26, and *Knierim v. Izzo* (1961), 22 Ill. 2d 73, where this court previously examined common law actions brought to recover for loss involving destruction of the family unit, are particularly helpful. The court reasoned in both of those decisions that since the remedy sought in each case was not significantly different from the statutory remedy available under the Wrongful Death Act, which allows compensation for "pecuniary injuries," a common law action in tort would not be recognized.

In *Hall v. Gillins* (1958), 13 Ill. 2d 26, the child and widow of the decedent brought a common law action alleging deprivation of the support, companionship, guidance, advice and affection of the father and husband. In addressing the issue of recoverable damages the court said:

> "The gap between the 'damages for destruction of the family unit' that plaintiffs claim, and the 'just compensation with reference to the pecuniary injuries resulting from such death' that the statute allows, is not so wide as the words used would suggest. The term 'pecuniary injuries' has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case. *** The broad scope of the phrase 'pecuniary injuries' is further shown by those cases which hold that in the case of a child the jury may take into account the loss of instruction and moral, physical and intellectual training brought about by the death of the father. *Goddard v. Enzler*, 222 Ill. 462; *Ittner Brick Co. v. Ashby*, 198 Ill. 562; *Illinois Central Railroad Co. v. Weldon*, 52 Ill. 290." 13 Ill. 2d 26, 31.

In *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83, the court relied upon *Hall* in finding "that the differences between an action for loss of consortium resulting from the death of a husband and an action for pecuniary loss under the Wrongful Death Act are not sufficiently significant to warrant us recognizing the action for loss of consortium as an additional remedy available to the widow."

In addressing the loss of consortium issue in *Knierim* the court reiterated our words in *Hall* that " '*** [t]he term "pecuniary injuries" has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case.' " (22 Ill. 2d 73, 82.) While neither *Knierim* nor *Hall* explicitly held that loss of consortium was to be considered by the jury in deciding what the appropriate amount of damages was, it is apparent that the court denied the common law counts in both actions because the remedy available in the preemptive wrongful death statute allowed compensation for the injuries alleged.

The defendants rely upon *Howlett v. Doglio* (1949), 402 Ill. 311, to support their assertion that "pecuniary injuries" under the Wrongful Death Act does not include loss of consortium. The dissenting justice in the appellate court also buttressed his opinion with the language of *Howlett*. The plaintiff in *Howlett v. Doglio* (1949), 402 Ill. 311, brought suit under the Liquor Control Act (Ill. Rev. Stat. 1947, ch. 43, par. 135) to recover damages for the death of her daughter. The court held that the plaintiff did not sustain an injury within the ordinary meaning of section 14 of article VI of the Liquor Control Act (Ill. Rev. Stat. 1947, ch. 43, par. 135). The court compared damages recoverable under the Liquor Control Act with the damages available under the Wrongful Death Act (Ill. Rev. Stat. 1947, ch. 70, par. 2). The majority, in *dicta*, recognized that under the Wrongful Death Act a presumption of pecuniary loss exists where the next of kin are lineal heirs and that the familial

relationship by itself is enough to sustain a judgment awarding substantial damages, without proof of actual loss. (*Howlett v. Doglio* (1949), 402 Ill. 311; *Wilcox v. Bierd* (1928), 330 Ill. 571; *Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1908), 237 Ill. 104.) The court then said:

> "The expression 'pecuniary injuries,' employed in the Wrongful Death Act, refers to a measurement of damages and is not synonymous with 'injury in property,' appearing in the Dram Shop Act. As pointedly observed in *Michigan Central Railroad Co. v. Vreeland*, 227 U.S. 59, 'A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of the loss of the beneficial plaintiff which is the foundation of recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' Patterson, Railway Accident Law, par. 49." (402 Ill. 311, 316-17.)

That observation was implicitly overruled in *Hall* and *Knierim* and is inconsistent with this court's holding in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 160, as well as the United States Supreme Court's decision in *Sea-Land Services, Inc. v. Gaudet* (1974), 414 U.S. 573, 39 L. Ed. 2d 9, 94 S. Ct. 806.

In *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, *cert denied* (1956), 352 U.S. 937, 1 L. Ed. 2d 170, 77 S. Ct. 219, the court, in construing the Wrongful Death Act (Ill. Rev. Stat. 1951, ch. 70, par. 2), said that it has been repeatedly held that the jury may award damages for such intangibles as the decedent's felicity and care as a father (8 Ill. 2d 164, 179). The court looked to *Miller v. Southern Pacific Co.* (1953), 117 Cal. App. 2d 492, 256 P.2d 603, where a jury's award was upheld for children's loss of the father's guidance, attention, advice, training, and instruction. This court had also previously upheld

538

awards for a child's loss of instruction and training due to
the death of the father. (*Goddard v. Enzler* (1906), 222 Ill.
462; *Anthony Ittner Brick Co. v. Ashby* (1902), 198 Ill.
562.) Since we have said that the felicity and care of a fa-
ther are capable of evaluation as "pecuniary injuries" un-
der the Wrongful Death Act, we are compelled to conclude
that the companionship and conjugal relationship of a
spouse are equally compensable as "pecuniary injuries."

In *Gaudet* the United States Supreme Court permitted
recovery for loss of society in aligning the maritime wrong-
ful death remedy with a majority of States' wrongful death
statutes and incorporated one commentator's observation
that " '[w]hether such damages are classified as "pecu-
niary" or recognized and allowed as non-pecuniary, the re-
cent trend is unmistakably in favor of permitting such re-
covery.' " (*Sea-Land Services, Inc. v. Gaudet* (1974), 414
U.S. 573, 587, 39 L. Ed. 2d 9, 22 S. Ct. 806, 816, quoting
S. Speiser, *Recovery for Wrongful Death* 218 (1966).) The
court expressly took notice that the wrongful death stat-
utes of California, Delaware, Michigan, Minnesota, Mon-
tana, Pennsylvania, Texas, and the Virgin Islands all limit
recovery to pecuniary losses; and all have been construed
by those States' courts as permitting recovery for the pe-
cuniary value of the decedent's society. (*Sea-Land Services,
Inc. v. Gaudet* (1974), 414. U.S. 573, 587, 39 L. Ed. 2d 9,
22, 94 S. Ct. 806, 816.) South Dakota in *Anderson v. Lale*
(1974), 88 S.D. 111, 216 N.W.2d 152, has also permitted re-
covery for loss of companionship and society as pecuniary
losses under the South Dakota wrongful death act. See S.
Speiser, *Recovery for Wrongful Death* sec. 3:49 (2d ed.
1975).

The appellate court in *Kaiserman v. Bright* (1978), 61
Ill. App. 3d 67, affirmed the dismissal of one count in a
complaint that sought compensation for loss of society in a
wrongful death action. There the appellate court correctly
noted that the term "pecuniary injuries" is broadly con-

strued and a widow is presumed to incur such losses without proof of actual loss. However, the court then incorrectly cited *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, finding that this court had "specifically refused to include within the scope of pecuniary losses any recovery for loss of society" (61 Ill. App. 3d 67, 70).

In *Zostautas* the parents of a five-year-old boy brought an action for breach of contract and a claim under the Wrongful Death Act (Ill. Rev. Stat. 1959, ch. 70, par. 1) to recover damages for the death of their son, who died while undergoing a tonsillectomy. The court said that the parents' mental anguish was not recoverable in a wrongful death action. We agree with the appellate court in this case that the loss of the decedent's society, companionship and conjugal relations is sufficiently distinct from bereavement to distinguish this action from the complaint in *Zostautas*. This court held in *Zostautas* that a plaintiff could maintain a cause of action under the Wrongful Death Act and recalled the words of Justice Cardozo that "[i]t would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied." *Van Beeck v. Sabine Towing Co.* (1937), 300 U.S. 342, 350-51, 81 L. Ed. 685, 690, 57 S. Ct. 452, 456-57.

The plaintiff in *Zostautas* did not object to the proffered jury instruction stating that, in determining pecuniary injuries, the grief or sorrow of the widow and next of kin cannot be considered. To allow a plaintiff to recover damages for emotional distress brought on by the decedent's death is different from allowing compensation for the benefits of the companionship that the widow would have enjoyed had her husband not died.

It is true that damages for loss of consortium are not capable of being given the detailed in-depth analysis that an expert can be called upon to testify about in calculating a decedent's professional worth where future earnings of an individual employed in a particular field can be mea-

sured with precision and particularity. Just the same the damages for loss of a husband's society, companionship and sexual relations are not immeasurable. All of the elements that comprise what is considered to be loss of consortium may not be the most tangible items, but a jury is capable of putting a monetary worth on them. Therefore, to be consistent with the broad interpretation of "pecuniary injuries" under the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2) we find loss of consortium to be included.

The purpose of the Wrongful Death Act is to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent's death. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73; *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 613.) It is intended to provide the surviving spouse the benefits that would have been received from the continued life of the decedent. The jury should have been instructed that the value of the decedent's companionship and conjugal relations could be considered in computing the damages to be recovered.

In *Smith v. City of Detroit* (1972), 388 Mich. 637, 202 N.W.2d 300, the Supreme Court of Michigan reaffirmed the holding of *Wycko v. Gnodtke* (1960), 361 Mich. 331, 339, 105 N.W.2d 118, 122, that loss of companionship was recoverable as a pecuniary loss under the Michigan Wrongful Death Act. The court in rejecting the strict economic value measure of pecuniary loss said:

"The pecuniary value of a human life is a compound of many elements. \*\*\* [A]n individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain. \*\*\* It is true, of course, that there will be uncertainties in all of these proofs, due to the nature of the case, but we are constrained to observe that it is not the privilege of him whose wrongful act caused the loss to hide behind the uncertain-

ties inherent in the very situation his wrong has created."
(*Wycko v. Gnodtke* (1960), 361 Mich. 331, 339-40, 105
N.W.2d 118, 122-23.)

One consideration in assessing the pecuniary value of the
decedent's worth is the widow's loss of consortium.

In view of our holding it is clear that the jury was not
properly instructed on the measure of damages. The lan-
guage of IPI Civil No. 31.07 that indicates that in deter-
mining "pecuniary injuries" the jury may not consider
"[t]he loss of decedent's society by the widow and next of
kin" is no longer valid. In determining the pecuniary value
of a spouse under IPI Civil No. 31.04 the society, compan-
ionship and conjugal relationship that constitute loss of
consortium are factors that the jury may consider.

At trial the estate sought to introduce proof of the
State inheritance taxes and the Federal estate taxes it was
required to pay after the decedent's death. The State in-
heritance and Federal estate taxes were not levied on the
estate because of any wrongful conduct of the defendants.
The estate, however, asserts that payment of the taxes
should be considered by the jury because they were prema-
turely paid. The plaintiff estate urged the court to employ
a loss-to-estate analysis that looks to the amount the dece-
dent would reasonably be expected to save and accumulate
(S. Speiser, Recovery for Wrongful Death sec. 3:1 (2d ed.
1975).) As we have previously noted, damages under the
Wrongful Death Act are assessed in accordance with the
loss to decedent's survivors. (Ill. Rev. Stat. 1975, ch. 70,
par. 2.) The test is a measurement of benefits of pecuniary
value that the decedent might have been expected to con-
tribute to the surviving spouse and children had the dece-
dent lived. But whatever measurement is used to assess
losses—loss of reasonable value of accumulation to the es-
tate or not—we find no support in any jurisdiction that
would permit the kind of recovery asked for by the estate
here. The estate seeks to recover investment income that
will be lost from cashing assets to discharge the estate's

tax liability. It is not recoverable. (See Speiser, Recovery for Wrongful Death sec. 6:11 (2d ed. 1975).) The trial court acted properly in denying admission of evidence concerning the State inheritance and Federal estate taxes.

It is necessary to briefly reconstruct the procedural history of this case. Jury verdicts were entered in favor of both the estate and Verla Elliott, and the judgment was entered on February 22, 1979. On February 23, 1979, a post-trial motion was filed by the estate. The motion asked for a new trial on the issue of damages only, or in the alternative a new trial on the merits of counts I and II concerning losses to the estate. The estate complained of certain jury instructions improperly given and certain jury instructions improperly refused by the trial judge. On March 19, 1979, a hearing was conducted on the estate's post-trial motion. The motion was denied, and counsel for the estate immediately filed a notice of appeal. On March 20, 1979, the defendants filed a post-trial motion seeking relief from both the judgment in favor of the estate and in favor of Verla Elliott. On April 10, 1979, the defendants' post-trial motion was denied. The defendants immediately filed a notice of appeal. The appellate court ruled on its own motion that defendants' notice of appeal was not timely filed and dismissed the defendants' appeal. The appellate court found that Rule 303 (73 Ill. 2d R. 303) completely relieves the party making a later appeal from filing a post-trial motion. Supreme Court Rule 303 provides in pertinent part:

> "If a timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him, or within 30 days after the entry of judgment, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken."

The appellate court held that once the estate filed its notice of appeal the trial court lost all jurisdiction to pass on defendants' post-trial motion. Prior to the appellate de-

cision in this case, three other divisions of the appellate court (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791; *Bitzer Croft Motors, Inc. v. Pioneer Bank & Trust Co.* (1980), 82 Ill. App. 3d 1; *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262) ruled that a post-trial motion is required even when an opposing party has filed a notice of appeal.

Section 68.1(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.1(3)) addresses the filing of post-trial motions in jury cases. It provides in pertinent part:

"(3) Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof."

Supreme Court Rule 366 addresses the scope of appellate review. It provides:

"A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." 73 Ill. 2d R. 366(b)(2)(iii).

The reasoning of *Flynn, Bitzer Croft Motors, Inc.* and *Farwell* is supported by the rationale of Rule 366 that issues must be presented to the circuit court in order to give the trial judge an opportunity to review possible errors that may have occurred. Both *Farwell* and *Bitzer* emphasize that one party's filing of a notice of appeal under Rule 303(a) (73 Ill. 2d R. 303(a)) should not foreclose the right of another party to file a timely post-trial motion. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791; *Bitzer Croft Motors, Inc. v. Pioneer Bank & Trust Co.* (1980), 82 Ill. App. 3d 1.) That is correct. We are not operating under a race statute that would effectively deny a party a chance to bring a possible error to the trial court's attention.

Although the jurisdiction of the appellate court attaches instanter upon the filing of a notice of appeal (*City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472), we find that the

circuit court retained jurisdiction to hear the defendants' post-trial motion that complained of the personal injury award to Verla Elliott and asserted that the decedent was guilty of contributory negligence as a matter of law. (See *In re Estate of Lucas* (1978), 71 Ill. 2d 277, 281.) In *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472, the plaintiff asked the trial court to vacate a judgment it had previously entered from which the defendant in the case had filed a proper notice of appeal. A party cannot petition a trial court to reconsider its judgment once an appeal has been properly filed from that judgment. The defendants, here, are not asking that the trial court vacate its earlier order denying the relief sought by the estate in its post-trial motion; the defendants are rather asserting that other errors were made at trial and are properly bringing the claims to the trial court so that it may first review the alleged errors. The defendants brought their post-trial motion within the prescribed 30-day limit after the trial court's entry of judgment (Ill. Rev. Stat. 1977, ch. 110, par. 68.1(3)). Had the defendants failed to file their post-trial motion, the complained-of errors would not have been adequately preserved for the purposes of review. The plaintiff's filing of the notice of appeal did not divest the trial court from ruling on the defendants' timely post-trial motion concerning issues independent of those raised by the estate. The trial court denied the defendants' post-trial motion on March 29. Notice of appeal is proper when it is filed "within 30 days after the entry of the order disposing of the [post-trial] motion." (73 Ill. 2d R. 303(a).) Thus, the defendants' filing of their notice of appeal on April 10 was proper.

Since the appellate court erroneously dismissed the defendants' appeal, it is necessary for us to remand to the appellate court for consideration of the alleged errors that defendants raised in their post-trial motion of March 20, 1979, including the claim that they are entitled to a judg-

ment as a matter of law. Unless the appellate court finds this claim has merit, the court shall remand for a new trial on the issue of damages, with directions that the jury be instructed to consider the widow's loss of consortium. In view of this disposition, we need not consider whether the estate adequately preserved the complained-of error that the damages awarded to the estate were inadequate as a matter of law.

Finally, we hold that our affirmance of the appellate court's holding allowing the jury to be instructed on the loss of consortium in cases brought under the Wrongful Death Act applies to this case and all claims not finally adjudicated.

*Affirmed in part and reversed in part and remanded, with directions.*