DAMIANO MALFEO *et al.*, Plaintiffs-Appellees, v. ERNEST LARSON, Defendant-Appellant.

First District (4th Division)   No. 1—89—3140

Opinion filed December 27, 1990.

Brenner, Mavrias, Dorn & Alm, of Chicago (Bruce Farrel Dorn, of counsel), for appellant.

William C. Coughlin, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Damiano and Annamarie Malfeo, brought an action in the circuit court of Cook County against defendant, Ernest Larson. Damiano sought damages for injuries that he sustained when he collided with defendant. Annamarie sought damages for loss of consortium. At the close of a bench trial, the trial court entered judgment for plaintiffs and awarded each damages.

Defendant appeals, contending: (1) the count of plaintiffs' complaint on which the trial court entered judgment failed to state a cause of action, (2) the trial court erred by not itemizing plaintiffs' damages, and (3) plaintiffs' damages were excessive.

We affirm the judgment of the trial court.

BACKGROUND

The trial adduced the following facts. On May 9, 1987, Damiano and Annamarie were married. At approximately 1 a.m. on the morning of May 10, Damiano and defendant were standing in line to check in at the O'Hare Hilton Hotel. A shouting match developed between Damiano and defendant. Damiano testified essentially that he raised his arms in a defensive gesture. Defendant then grabbed his arms and pulled him to the floor. Defendant fell on top of Damiano and punched him in the back of the head two or three times. Defendant testified

essentially that Damiano raised his arms in a threatening gesture. Defendant then grabbed Damiano's arms, which caused both of them to fall. He did not strike Damiano in anyway.

Damiano and defendant were separated. Damiano testified that he immediately experienced pain in his left shoulder and could not move his left arm. He was taken by ambulance to a hospital emergency room. Damiano was treated for an injured left shoulder, prescribed pain relievers, and given an arm sling. The ambulance cost $125 and the emergency room treatment cost $132.

Plaintiffs did not return to the hotel. Rather, they drove directly to the airport to catch their morning flight. Plaintiffs flew to Jamaica for a two-week honeymoon. They stayed at an "all-inclusive" resort, *i.e.*, where airfare, food and liquor, lodging, recreation, entertainment, and all other expenses were included in one price.

The medication caused Damiano to sleep for the first day of the trip. Despite the medication, he had constant throbbing, and occasionally severe pain in his left shoulder. After a few days, Damiano took the medication only occasionally to avoid the resulting drowsiness. Damiano wore the arm sling for approximately the first week of the honeymoon and could not use his left arm during that time. He testified essentially that he could not participate in any sport activity. On cross-examination, he testified that he played water volleyball with one arm during his last few days. Further, he participated in sightseeing and shopping tours. He watched but did not participate in evening entertainment. He also ate the meals served. Plaintiffs paid $3,718 for the vacation.

Damiano testified that upon return from the honeymoon, he sought further medical treatment totalling $230. He further testified that he continued to experience shoulder pain when he performed certain activities or when lying in certain positions. He relieved the shoulder pain with aspirin. Damiano testified on cross-examination that he played league softball twice per week. He also played golf and basketball subsequent to the injury with the same frequency as prior to the injury. Damiano essentially had the same range of motion in his left shoulder as in his right shoulder.

Annamarie testified that she and Damiano were engaged for approximately 14 months. It was her first marriage. She testified that on their arrival at the resort, Damiano slept for the first day and subsequent morning. They were intimate for the first time as husband and wife on the second night of the honeymoon. Annamarie testified essentially that although she and Damiano were intimate during the honeymoon, these episodes were uncomfortable and awkward. Addi-

tionally, Damiano's left shoulder pain prevented him and Annamarie from generally being physically close.

Plaintiffs filed their amended complaint on April 12, 1988. In count I, plaintiffs alleged civil battery and sought compensatory damages. In count II, they realleged the battery claim and sought punitive damages. Count III contained a negligence claim, in which plaintiffs alleged that defendant negligently collided with Damiano and, alternatively, failed to maintain a proper lookout while running through the hotel. Damiano sought damages for personal injuries, and Annamarie sought damages for loss of consortium.

Immediately prior to trial, the trial court granted defendant's motion to dismiss count II, based on section 2—604.1 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—604.1.) At the close of a bench trial on August 9, 1989, the trial court entered judgment for plaintiffs on count III of the amended complaint. The court awarded Damiano $15,000 and Annamarie $5,000. On October 17, 1989, the trial court dismissed defendant's post-trial motion. Defendant appeals.

OPINION

I

Defendant first contends that count III of the amended complaint, on which the trial court entered judgment, failed to state a cause of action. He argues that count III does not state a cause of action for negligence, but rather for a "negligent battery," which does not exist. See W. Keeton, Prosser & Keeton, on Torts §9, at 41 (5th ed. 1984).

■■ We note plaintiffs' contention that defendant waived this issue on appeal because he did not include it in his post-trial motion. However, this cause was tried before the court, sitting without a jury. "In a non-jury civil case the failure to include a point in a post-trial motion does not preclude its being raised on appeal." *City of Chicago v. Mid-City Laundry Co.* (1972), 8 Ill. App. 3d 88, 90, 289 N.E.2d 233, 234, cited in *People v. One 1974 Chevrolet Corvette No. 1Z37J4S400951* (1983), 117 Ill. App. 3d 616, 618, 453 N.E.2d 890, 891.

■■ To be legally sufficient, a complaint for negligence must set out facts that establish the existence of a duty owed by the defendant to the plaintiffs, a breach of that duty, and an injury proximately resulting from the breach. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18, 440 N.E.2d 96, 98; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, 308.) Further, it is axiomatic that every person owes to all others the duty to exercise care to guard against injury which

may naturally flow as a reasonably probable and foreseeable consequence of his actions. (*Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 103, 197 N.E. 578, 582; *Harper v. Epstein* (1974), 16 Ill. App. 3d 771, 772-73, 306 N.E.2d 690, 691.) Additionally, a complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that would entitle the plaintiff to relief. *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 837, 422 N.E.2d 86, 89.

■ Applying these principles to the case at bar, it is clear that count III stated a cause of action for negligence. Plaintiffs alleged therein that defendant negligently collided with Damiano, which caused him to fall and, alternatively, failed to maintain a proper lookout for his own safety and the safety of others while running through the hotel. Plaintiffs further alleged that defendant's negligence resulted in their injuries. These facts were more than sufficient to entitle plaintiffs to relief. Accordingly, we hold that count III of the amended complaint stated a cause of action.

## II

Defendant next contends that the trial court erred by not itemizing plaintiffs' damages. He relies on section 2—1109 of the Code of Civil Procedure, which provides as follows:

"Itemized Verdicts. In every case where damages for injury to the person are assessed *by the jury* the verdict shall be itemized so as to reflect the monetary distribution among economic loss and non-economic loss, if any ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1109.)

Defendant argues that the trial court failed to "comply" with section 2—1109, and that such failure constituted error.

■ We cannot accept defendant's argument. Section 2—1109 expressly limits its application to damages assessed "by the jury." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1109.) The primary rule governing the interpretation and construction of statutes is that courts must ascertain and give effect to the intention of the legislature. We should seek the legislative intent primarily from the language that the statute uses. Where the language of the act is certain and unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758, 764; *People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 813-14, 404 N.E.2d 368, 370-71.) Indeed, we have previously noted that "the legislative intent to the section was to require *jurors* to carefully consider the purpose for

which each dollar in damages was awarded." (Emphasis added.) (*Doering v. Janssen* (1979), 76 Ill. App. 3d 62, 67, 394 N.E.2d 721, 725.) Since this cause came to a bench trial and not a jury trial, section 2—1109 simply does not apply.

■ Further, at common law, it is not required that the various elements or items of damages be separately stated in a verdict with the amount awarded for each item. (89 C.J.S. *Trial* §508 at 184, (1953); S. Puterbaugh, Common Law Pleading & Practice §1163 (10th ed. 1926); see, *e.g.*, *Schultz v. Gilbert* (1939), 300 Ill. App. 417, 425, 20 N.E.2d 884, 887; *Holmes v. Tarble* (1898), 77 Ill. App. 114, 115.) Since section 2—1109 directs juries to itemize its damages award, it is in derogation of the common law.

Courts strictly construe statutes in derogation of the common law, since the common law is not to be deemed abrogated by statute unless it appears clearly that such was the legislative intent. Statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of the statute or is necessarily implied from what is expressed. This principle includes statutory innovations in derogation of the common law; courts will not presume that the legislature intended an innovation further than that which the statute specified or clearly implied. *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 375-76, 387 N.E.2d 1118, 1119 (and authorities cited therein).

■ The above principle applies even to remedial statutes in derogation of the common law. The remedial aspect of such a statute does not warrant construing the statute liberally from the standpoint of exclusion and inclusion of persons. Courts reason that they cannot read into such a statute something that is not within the clearly expressed intent of the legislature. Therefore, where a statute is remedial, yet in derogation of the common law, courts will construe the statute strictly in determining what persons come within the statute. *Lites*, 70 Ill. App. 3d at 376, 387 N.E.2d at 1120, quoting *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 82-83, 96 N.E.2d 482, 484.

■ Applying these principles to the instant case, we hold that we cannot include trial judges within the meaning of section 2—1109 which, on its face, applies only to juries. We hold that section 2—1109 did not apply to the facts of this case and, consequently, that the trial court did not err by not itemizing plaintiffs' damages awards.

### III

Defendant next contends that plaintiffs' damages awards were ex-

cessive. He argues that Damiano's award of $15,000 "falls far outside the flexible limits of fair compensation."

■ An award of damages is excessive and unfair if the amount falls outside of the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. Damages are particularly within the province of the trier of fact and a reviewing court will not disturb them on appeal unless obviously the result of passion or prejudice. (*King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 359, 384 N.E.2d 22, 25.) The reviewing court should examine such factors as the primacy and extent of the injuries suffered, plaintiff's age, the possibility of deterioration in the future, the medical expenses incurred, past and future wage losses and any restrictions that the injuries may have placed on the daily activities of the plaintiff. *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 757-58, 460 N.E.2d 28,38, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.

Damiano, whom the evidence reveals to be an athletic person, was deprived of the opportunity to enjoy most of the athletic activities offered at the resort. Further, he and Annamarie had already paid for and had planned to participate in most, if not all, of the resort's activities during their two-week stay. Additionally, Damiano testified that the injury continued to affect him years later.

Defendant additionally contends that Annamarie's award of $5,000 for loss of consortium was also excessive. Defendant notes that plaintiffs were unable to have sexual relations "for a period of three days and thereafter engaged in sexual relations three or four times over the next two weeks." Defendant apparently argues that since plaintiffs had sexual relations, Annamarie's $5,000 damages award was excessive.

■ ■ This argument misses the mark. When one spouse (the impaired spouse) is injured by the negligence of another, the other spouse (the deprived spouse) may recover from the tortfeasor for the loss the deprived spouse suffered by virtue of the impaired spouse's injury. This loss, generally labelled a loss of consortium, includes material services, elements of companionship, felicity (*i.e.,* happiness), and sexual intercourse, all welded into a conceptualistic unity. *Brown v. Metzger* (1983), 118 Ill. App. 3d 855, 858, 455 N.E.2d 834, 836, *aff'd* (1984), 104 Ill. 2d 30, 470 N.E.2d 302.

Defendant's argument focuses on the sexual relations of plaintiffs during the honeymoon. However, consortium includes loss of a spouse's companionship, happiness, and society. The trial adduced facts showing such loss. Damages for loss of consortium are not sub-

ject to the detailed, in-depth analysis that can be applied to other types of damages. However, damages for loss of a husband's society, companionship, and sexual relations are nevertheless measurable. All of the elements of loss of consortium may not be the most tangible items, but a fact finder is capable of putting a monetary worth on them. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 539-40, 442 N.E.2d 163, 168.) This is precisely what the trial court did in the case at bar. We conclude that plaintiffs' damages awards were within the realm of reasonable compensation.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.