ROBERT G. BULLARD, Adm'r of the Estate of Scott R. Bullard, Deceased, *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* BRUCE E. BARNES *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District No. 4—82—0363

Opinion filed February 1, 1983.—Rehearing denied March 4, 1983.

Thompson, Strong & Blakeman, Ltd., of Pontiac (Kenneth L. Strong, of counsel), for appellants.

Kinate & Morgan, of Fairbury, and Gomien, Root & Masching, of Morris, for appellees.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendants appeal from a judgment entered upon jury verdicts in the total amount of $326,250 against them in the circuit court of

Livingston County. Plaintiffs have cross-appealed the dismissal of certain counts in the amended complaint seeking damages for emotional distress. For the reasons hereinafter set forth, we reverse the judgment against the defendants and remand for a new trial on damages only; we affirm the dismissal of the emotional distress counts.

Defendants have raised a host of issues concerning matters which occurred at nearly every stage of the trial. We shall deal first with what we consider the more significant issues which led to error below and then comment more briefly on other matters which do not constitute error but which should be avoided on retrial.

The factual background demonstrated that Scott Bullard, a 17-year-old youth, was killed when the automobile he was driving collided with another on a blacktop road north of Pontiac. The accident occurred between 7:30 and 8 am. on the very foggy morning of October 1, 1979. Bullard was driving south on the blacktop; two vehicles were being driven north in the same area, one by Harold Bohm and the other by Robert Graves. Behind the Bohm and Graves vehicles was a semi-trailer truck owned by the defendant Livingston County Ready-Mix, Inc., and driven by defendant Barnes, its employee. According to the testimony of Bohm and Graves, the truck pulled out into the southbound lane and passed both of them, then returned to the northbound lane and continued north without stopping. This forced Bullard's vehicle off the road and out of control. It veered back onto the highway and collided with the Bohm vehicle. Bullard suffered injuries from which he died.

Shortly after the accident Bullard's mother, Sharon Bullard, came upon the scene while driving another son to school. She stated that Scott was lying in the front seat of the car and moving his hand. She observed no blood upon him. A deputy sheriff arrived in response to a call received at 7:53 a.m., took Scott's pulse, and determined that he was alive at about 8:10 or 8:15 a.m. A rescue squad arrived and took Scott to a hospital in Pontiac; his father, Robert Bullard, arrived later and the family was informed that Scott was dead.

An eight-count complaint was filed in the circuit court of Livingston County against the defendants by Robert, the father, individually and as administrator of Scott's estate, and by Sharon, the mother, and Paul and Todd, decedent's brothers, individually. Counts I and II sounded under section 1 and 2 of the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1, 2) and alleged wilful and wanton misconduct in count I and negligence in count II with the same factual allegations in each count. Counts III and IV alleged property damage to Robert's automobile and reiterated the factual allegations from count I. Count

III was based on wilful and wanton misconduct and asked for compensatory and punitive damages. Count IV sought compensatory damages only for negligence. Counts V and VI sounded under "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1979, ch. 40, par. 1015) (Family Expense Act) and reiterated the factual allegations from count I. As with the preceding counts, count V was predicated on wilful and wanton misconduct and count VI on negligence. Counts VII and VIII sounded under the Survival Act (Ill. Rev. Stat. 1979, ch. 110½, par. 27—6) and sought damages for the suffering of the decedent from the time of the collision until the time of his death. These counts also reiterated the factual allegations of count I with count VII being based on wilful and wanton misconduct and count VIII being based on negligence.

Motions to dismiss were allowed as to the complaint and the first amended complaint and on November 6, 1980, the defendants were ordered to answer the second amended complaint whose structure was basically the same as the complaint described above. The trial date had originally been set for April 3, 1981, but was continued on motions for continuance by the parties.

On September 4, 1981, plaintiffs sought to amend their pleading by adding counts IX-XII and to add a specific prayer for punitive damages to count I (Wrongful Death—wilful and wanton) and to count VII (Survival Act—wilful and wanton). The trial court denied the motion as to punitive damages but allowed it as to the additional counts. These alleged in general emotional agony and suffering by the mother and father and were based on wilful and wanton misconduct and negligence as with the prior counts. The wilful and wanton counts sought punitive damages.

Later, on October 7, 1981, plaintiffs were granted leave to amend further by striking a specific figure ($12,000) asked for as punitive damages in count III (property damage—wilful and wanton). Trial was then set for November 23, 1981. On October 13, 1981, plaintiffs once again amended by adding count XIII. It alleged that the defendant Livingston County Ready-Mix, Inc., was negligent in hiring defendant Barnes and in entrusting the vehicle to him.

A pretrial was held on November 13, 1981, and in this proceeding the trial court dismissed counts IX-XII (emotional agony and suffering by the parents) and ordered the defendant to answer count XIII (negligent entrustment). Defendants thereupon moved for a continuance and it was denied. Defendants also moved for a severance of the compensatory damage counts from the punitive damage counts. The trial court denied the severance motion but indicated that it would reconsider if

the defendants admitted liability.

*Voir dire* commenced on November 16, 1981, and continued through November 17. Before its close defendants admitted liability on counts II, IV, VI, and VIII (wrongful death, property damage, family expense, and survival—all negligence) and moved to dismiss counts I, V, VII and XIII (wrongful death, family expense, and survival—all wilful and wanton; and negligent entrustment). The trial court denied the motion to dismiss and thereupon the defendants admitted liability on counts I, V, VII and XIII. They further admitted that liability under the Family Expense Act was $3,236.10. Judgment was then entered on count V in that amount and count VI was dismissed.

The trial court then found that the admissions of liability precluded judgment on count XIII (negligent entrustment) and dismissed that count. It further entered summary judgment as to liability against the defendants on count III (property damage—wilful and wanton) on the ground that defendants had admitted liability as to count IV (property damage—negligence) and that both counts alleged the same facts.

Following the admissions of liability, the trial court allowed the defendants' motion for severance. It found that plaintiffs had alleged wilful and wanton misconduct (admitted) in counts I and VII but had not sought punitive damages under these counts. It further observed that counts II and VIII alleged ordinary negligence (admitted) and that count III was the only remaining count which sought punitive damages. It therefore ordered that the compensatory damage counts, II and VIII (wrongful death and survival—negligence), and I and VII (wrongful death and survival—wilful and wanton), be first submitted to the jury and that immediately upon the return of this verdict, count III (property damage—wilful and wanton—punitive damage claim) be then submitted to the same jury.

The jury returned a single general verdict for wrongful death in the amount of $285,000 and a single general verdict of the decedent's pain and suffering in the amount of $40,000. The following day the matter of property damage and its concomitant punitive damage claim were submitted. Before trial the defendants had admitted that the property damage was $750. The jury returned a verdict for punitive damages in favor of the plaintiffs and against defendant Barnes in the amount of $500; the verdict was in favor of the defendant Livingston County Ready-Mix, Inc. and against the plaintiffs.

Judgment was entered on the verdicts, post-trial motions were denied, and this appeal followed. Defendants, as previously indicated, have appealed a variety of issues; plaintiffs have cross-appealed the dismissal of counts IX-XII (emotional suffering).

In our judgment the two issues raised by the defendants which have sufficiently tainted the proceedings as to require a retrial on damages are the jury instructions and the presentation of evidence going to the question of liability.

■ The trial court gave to the jury a plaintiff's instruction (Illinois Pattern Jury Instruction, Civil, No. 31.03 2d ed. 1971) (hereinafter cited as IPI Civil), modified as follows:

> "In determining pecuniary loss to the parents and the weight to be given to the presumption of pecuniary loss to the parents, you may consider what benefits of pecuniary value, including money, goods and services the decedent might reasonably have been expected to contribute to his parents and brothers had the decedent lived, bearing in mind what you find the evidence shows concerning the decedent's age, sex, health, physical and mental characteristics, habits and *the parents loss of society with the decedent.*" (Emphasis added.)

We gather that the trial court's decision to give this instruction was based upon *Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 412 N.E.2d 638, which held that loss of consortium was an element of damage under the Wrongful Death Act. This decision was afterwards affirmed by the supreme court. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163) and upon denial of rehearing was made applicable to all cases theretofore filed. However, we do not understand either the appellate or the supreme opinion to sanction the loss of society of a child as an element of damage under the Wrongful Death Act.

In reviewing the history of the matter in *Elliott*, the supreme court commented that in *Kaiserman v. Bright* (1978), 61 Ill. App. 3d 67, 377 N.E.2d 261, the appellate court had affirmed the dismissal of one count in a complaint seeking compensation for the loss of the society of a child but had incorrectly cited *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 178 N.E.2d 303, for the proposition that loss of society cannot be included within pecuniary injuries under the Wrongful Death Act. *Kaiserman* was criticized but not overruled. *Zostautas* held that the negligence of a surgeon in causing the death of a child was a "default" under section 1 of the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, par. 1) and with regard to damages the court stated:

> "With respect to the elements of damage recoverable, it is evident that while defendant's alleged breach of contract is the basis of liability, the damages recoverable are limited by the terms of the Wrongful Death Act. Recovery thereunder is based upon the pecuniary value of decedent's life to his next of kin. *** Con-

sequently, plaintiffs' request for damages for their mental anguish must be rejected." 23 Ill. 2d 326, 336-37, 178 N.E.2d 303, 308.

In *Elliott* the supreme court then went on to say:

"We agree with the appellate court in this case that the loss of the decedent's society, companionship and conjugal relations is sufficiently distinct from bereavement to distinguish this action from the complaint in *Zostautas*." 92 Ill. 2d 530, 539, 442 N.E.2d 163, 167.

We believe that there is a qualitative difference between the "society" of a spouse and that of a child. "Society" is inherent in the marital relationship. The appellate court recognized this in its opinion in *Elliott*:

"Thus, Illinois case law permits either spouse to sue for loss of consortium following nonfatal injuries to the other spouse and implies that for death, the Wrongful Death Act provides compensation sufficient to obviate a common law action for lost society or consortium." (89 Ill. App. 3d 1144, 1147, 412 N.E.2d 638, 641.)

By extension of this logic, there being no common law action for loss of society of an injured child in nonfatal cases, we can find nothing for the Wrongful Death Act to obviate in death cases. There was no right of recovery for wrongful death at common law. (*Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.) If, as the appellate opinion in *Elliott* implies, the Wrongful Death Act is to supply the gap for fatal injuries and is the obverse of common law nonfatal actions, there is no basis for including within its damage provisions the loss of society of a child. The supreme court in *Elliott* once again reaffirmed a broad interpretation of pecuniary injuries under the Wrongful Death Act, but limited its holding to loss of consortium.

■ Defendants raised the question of excessive damages in their post-trial motions but have not argued it in this court nor raised it as an issue in their brief. It might therefore be considered waived under Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)). Furthermore, errors in instructions going to the measure of damages are viewed as harmless when there is no allegation of excessive damage. *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 371 N.E.2d 1228; *Sheley v. Guy* (1975), 29 Ill. App. 3d 361, 330 N.E.2d 567, *aff'd* (1976), 63 Ill. 2d 544, 348 N.E.2d 835.

The supreme court has recently stated, reaffirming prior decisions, that Rule 341(e)(7) is not a limitation on the reviewing court's jurisdiction. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208.) We

regard the matter of the loss-of-society instruction as so fundamental as to be neither waived nor harmless and sufficient to warrant reversal.

■ Defendants have raised three additional instruction issues which may be more briefly considered. First, they complain that the trial court refused a burden-of-proof instruction (IPI Civil No. 21.01). Since liability was admitted, this instruction would only have served to confuse the jury and it was not error to refuse it.

■ Second, defendants contend that two plaintiffs' instructions were repetitious and inconsistent. We agree. The trial court gave a non-IPI instruction as follows:

"There are two questions of damage for you to consider in this case and you will return a verdict as to each question of damages.

The first question is damages resulting from the pain and suffering experienced by Scott R. Bullard prior to his death.

The second question is the amount of damages sustained by the next of kin as a result of the death of Scott R. Bullard."

It then followed this instruction with another as follows:

"In the claim of pain and suffering of Decedent in this case, you must fix the amount of money which will reasonably and fairly compensate the Estate of Scott R. Bullard, Deceased, for the conscious pain and suffering experienced by Scott R. Bullard from the time he sustained the injuries until death. Plaintiffs' Instruction No. 15, IPI 30.01, 30.05."

It is apparent that the latter is an amalgam and modification of Nos. 30.01 and 30.05, although this is not indicated on the face of the duplicate as required by Supreme Court Rule 239(c) (87 Ill. 2d R. 239(c)). The two quoted instructions above are repetitious and inconsistent in that they refer sometimes to "pain and suffering" and other times to "conscious pain and suffering" from which it might be inferred that there is such a thing as "unconscious pain and suffering." On retrial the first instruction quoted above, designated in the record as "Plaintiffs' Instruction No. 12," should not be given and plaintiffs' No. 15 should be edited to state "conscious pain and suffering" in both instances.

Third, the defendants complain that the verdict form given to the jury and used by it on the wrongful death counts was the duplicate and bore the notation "Plaintiffs' Instruction No. 9 IPI - 45.01 Modified." Furthermore, it instructed the jury to assess damages for the "death of Scott R. Bullard" rather than for the "pecuniary loss to the next of kin." Defendants also suggest that the damage amount might have

been filled in before the form arrived in the jury room.

The trial judge stated that he was "mystified" as to how all this came about. Since the case must be retried, the error becomes harmless, and we believe that more meticulous attention to detail will prevent its recurrence.

Our second major area of concern has to do with the admission of irrelevant and inflammatory evidence. As has been indicated, the defendants admitted liability both as to negligence and as to wilful and wanton misconduct. Therefore, the trial was on damages only. Nevertheless, the trial court admitted evidence of the weather conditions, the actions of defendant Barnes in his passing maneuver, the failure of Barnes to stop after the accident, and pictures taken at the coroner's office of the decedent's corpse.

It is so fundamental as to need no citation of authority that admission of evidence is a matter largely within the discretion of the trial judge and reversal is not warranted in the absence of an abuse of that discretion. In our judgment discretion was abused in this case.

■■ Error in the admission of evidence does not require a reversal if there has been no prejudice or if the evidence has not materially affected the outcome of the trial. (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737; *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.) However, "harmful error" may exist when improperly admitted evidence is so pursued or of such a nature that it influences the verdict by an appeal to passion. *Tate v. Coonce* (1981), 97 Ill. App. 3d 145, 421 N.E.2d 1385; *Gilberto v. Nordtvedt* (1971), 1 Ill. App. 3d 677, 274 N.E.2d 139.

The only issues to be decided by the jury were the pecuniary loss by reason of his death to the next of kin and his conscious pain and suffering from the time of the accident until his death. The means of his demise and the operative facts of the accident were immaterial.

■■ As to the testimony about the weather conditions: Sharon Bullard and Bohm both testified without objection that the weather was very foggy. There was objection to Graves' testimony which was to the same effect. Where the same evidence to which objection is made has been admitted without objection, a party cannot assign error in the overruling of the objection. (*In re Carthen* (1978), 66 Ill. App. 3d 780, 384 N.E.2d 723.) Therefore, the objection to Graves' testimony came too late, and while evidence about the weather conditions was irrelevant and immaterial to the issues being tried, it cannot now be claimed as error.

■■ As to the passing maneuver: Bohm testified that defendant Barnes passed him and Graves, then testified that he was passed by

Barnes. The testimony of both indicates that Bullard was forced off the road to avoid hitting Barnes while he was passing Bohm. In addition, the testimony was augmented by extensive use of drawings showing the location of the various vehicles from the time defendant's truck was behind Graves until immediately after the collision.

Defense counsel objected and continued to object to Graves' testimony; he had also made a motion *in limine* to prohibit testimony as to the location of the vehicles. All of these objections and the motion were overruled. Plaintiffs argue that the location and speed of the vehicles were material to the nature and extent of decedent's injuries. This would be true in an injury case, especially when there is ground for believing that the plaintiff is exaggerating his injuries. However, it has no place in a wrongful death case, where the injuries led to death. The testimony of Sharon Bullard, the deputy sheriff, and the rescue squad was available to describe decedent's condition prior to his death. How he got into that condition became irrelevant upon the admission of liability. It was reversible error to admit it.

■■ As to Barnes' failure to stop: as with the testimony about the passing maneuver, this evidence too was irrelevant and immaterial to the issues and was particularly inflammatory. Bohm testified that Barnes "didn't stop, he took off. He never stopped." The trial court made a sort of split-phase ruling in which what Barnes did was stricken from the record but the fact that he did not stop was to remain in the record. We fail to see such a fine distinction.

Graves also testified about the failure to stop. He stated over objection that the semi was "on down the road" when he first saw the Bullard car on the west shoulder.

The admission of the testimony of Bohm and Graves was reversible error.

■■ As to the pictures: generally photographs which depict injuries are relevant to the nature and severity of the injury and the resultant pain and suffering. The photographs here are not particularly gruesome, but we fail to see how they could have been of any aid to the jury in determining conscious pain and suffering. There is no evidence in the record as to the cause of decedent's death. There is slight evidence that he was alive after the collision, but there is no evidence of consciousness of pain. The photographs were not there to corroborate any diagnosis or other objective evidence which might aid the jury in its determination. It was reversible error under the circumstances here to admit them.

Because the jury was improperly instructed and because irrelevant and immaterial evidence which had only the effect of being inflamma-

tory and prejudicial to the defendants was admitted, this cause will be remanded for a new trial. Liability has been admitted and the allegations of the complaint sufficiently state a cause of action for wilful and wanton misconduct on the part of the defendants. Therefore, the retrial will be on damages only in accordance with the views set forth in this opinion.

We turn next to the cross-appeal by the plaintiffs. As has been indicated, the trial court dismissed the counts alleging emotional trauma to the parents of the decedent and this is the subject of the cross-appeal.

●■ Illinois has long followed the contemporaneous impact rule in mental distress cases. (See *Carlinville National Bank v. Rhoads* (1978), 63 Ill. App. 3d 502, 380 N.E.2d 63.) This rule was partially abandoned in *Rickey v. Chicago Transit Authority* (1981), 101 Ill. App. 3d 439, 428 N.E.2d 596, *appeal allowed* (1982), 91 Ill. 2d 556.) However, in *Rickey* the plaintiff was present at the scene of the injury and witnessed it, although not suffering any contemporaneous impact. In the instant case, the record is clear that the mother was not present at the time of the collision but arrived thereafter only by fortuitous circumstance and that the father was never present at the scene. The rule has been criticized and abolished in many other jurisdictions (see *Rickey*), but we adhere to the statement in *Rhoads* that any alteration in this State must come from the supreme court.

The trial court's action in dismissing these counts was correct and it is affirmed in that regard.

Defendants have raised several other issues which are not likely to arise on retrial but which merit some brief mention. Throughout the proceedings and in this court they contend that it was error for the trial court to allow the same factual allegations to stand as to both ordinary negligence and to wilful and wanton misconduct.

Prior authority is split on this question. It poses difficulties for both plaintiffs and defendants. The plaintiff may well be uncertain as to how his proof will stand up on trial as to wilful and wanton and therefore needs a fall-back position on ordinary negligence. On the other hand, it is only fair for the defendant to know what he is being called upon to defend.

■■ ■ The issue is somewhat clouded by defendants' admission of liability. Plaintiffs argue that this admission has waived the point. We do not agree. An admission of liability is only an admission of the facts showing a breach of a legal duty. The supreme court has held that admissions of fact do not preclude nor waive any right to question the sufficiency of the pleadings. (*Henning v. Sampsell* (1908), 236 Ill. 375, 86 N.E. 274.) Both sides were entitled to a ruling on the question, and

it was never forthcoming. In our opinion the facts pleaded in the second amended complaint sufficiently state a cause of action in wilful and wanton misconduct. The defendant Barnes exhibited a reckless disregard for the safety of others (*Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 211 N.E.2d 720) by driving on the left side of the road for a long distance and for a long time during poor visibility in such a manner as to force another motorist off the road.

Defendants complaint about the *voir dire*, particularly with reference to what they deem an attempt by plaintiffs' counsel to predispose the jury to a large verdict. At one point defense counsel moved the trial court to take over the *voir dire* under Supreme Court Rule 234 (87 Ill. 2d R. 234) and the court denied the motion but admonished counsel not to mention specific figures. We have examined the very lengthy *voir dire* record; indeed, it comprises the bulk of a very bulky record; while we believe that the trial court might have exercised a greater degree of control over the questioning, we do not find anything so out of line in a hard-fought and sensitive trial as to warrant reversal on that basis.

Defendants maintain that it was erroneous for the trial court to enter summary judgment as to liability on count III (property damage—wilful and wanton—punitive damages). The trial court gave as its reason that the admission as to count IV (property damage—ordinary negligence) was sufficient. We do not agree. This is another aspect of the problem already discussed wherein the trial court treated ordinary negligence and wilful and wanton misconduct *in pari materia*. However, as we have noted, the allegations will support a wilful and wanton charge and therefore the error was harmless.

We have examined other contentions by the defendants and find that either they are without merit or will not recur at retrial.

The judgment in favor of the plaintiffs and against the defendants under the Wrongful Death Act and the Survival Act is therefore reversed and the cause is remanded for a new trial on damages only pleaded in count I (wrongful death—wilful and wanton) and count VII (Survival Act—wilful and wanton) in accordance with the views expressed in this opinion. The judgment is otherwise affirmed.

Affirmed in part, reversed in part, and remanded for a new trial on damages only.

GREEN and MILLER, JJ., concur.