**ESTATE OF Clyde DAVIS, Deceased, William H. Davis, Administrator, Plaintiff,**

v.

**Officers R. HAZEN; Leo Dauer, and Decatur Police Department Desk Clerk Marguerite Johnson, Defendants.**

No. 79–3132.

United States District Court, C.D. Illinois, Springfield Division.

July 7, 1983.

Richard J. Doyle, Danville, Ill., Ronald Tulin, Ltd., Charleston, Ill., for plaintiff.

Paul Brown, Heyl, Royster, Voelker & Allen, Springfield, Ill., for defendant Marguerite Johnson.

Sue Myerscough, Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, Springfield, Ill., for defendant Leo Dauer.

Vernon H. Houchen, Decatur, Ill., for defendant R. Hazen.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

On January 28, 1983, a jury returned a verdict in this § 1983 and wrongful death action, finding defendant Marguerite John-son, a Decatur Police Department information clerk, liable for damages to the estate of Clyde Davis and to his surviving son, William. Clyde Davis was a catatonic schizophrenic who had resided in a nursing home for many years. On or about April 2, 1978, he wandered away from the nursing home. Nursing home personnel notified the Decatur police that he was missing.

Clyde Davis was found on or about April 4, 1978, by a Decatur police officer, sitting in a vehicle which had been reported stolen. Because of his mental condition, Clyde Davis was not able to identify himself to the police. Mr. Davis was then taken to the Decatur City Jail; he never talked to the police and he was half-dragged into the station. He exhibited bizarre behavior, such as dropping his pants and clapping his hand over his mouth. The testimony at trial indicated that the deceased's mental condition would have been obvious to a reasonable person.

In effect at the time of Clyde Davis' arrest were Illinois Department of Corrections Rules and Regulations concerning municipal jail and lockup standards. Those rules provided that

    D.  No detainee with a known history of mental disorder or mental defect, or who shows evidence of such condition, shall be housed in any municipal jail. In the event such a detainer is received, he shall be afforded protective custody and constant supervision. Such person shall immediately be referred for appropriate professional study and diagnosis. If a finding of mental illness or mental disorder is made, the Chief of Police or the Chief Jailer shall immediately notify the appropriate authorities regarding the mental condition of the detainee so that a transfer can be effected.

Municipal Jail and Lockup Standards III, D. at 4.

In addition, under a General Order of the Decatur Police Department, the Information Clerk was responsible for taking proper precautions with a mentally ill prisoner

and for maintaining extra surveillance. Defendants' ex. 9 at 7.

Despite the obviousness of Davis' mental condition, and despite the standards noted above, Davis was placed in a cell with Donald Nobles, who had been arrested for murdering his girlfriend. Nobles testified that he was high on drugs at the time that Davis was placed in the cell with him, that he begged the officers not to place Davis in his cell, that he was hallucinating and paranoid at this time. Don Nobles brutally beat Clyde Davis to death.

The jury found in favor of the officers who transported Davis to the jail. Marguerite Johnson, the Information Clerk, was informed by at least two officers that Davis was the person who had been reported missing by the nursing home. Her commander told her to remove Davis from the city jail and take him over to the County jail. She testified that Davis was not removed immediately because it happened to be the day floors were waxed at the County building and County personnel apparently did not appreciate having prisoners transferred on that day.

The jury awarded plaintiff $50,000 compensatory damages for the deceased's pain and suffering prior to death under the civil rights and survival act causes of action. The jury also awarded $525,000 in punitive damages for the violation of the deceased's civil rights. Clyde Davis' son was awarded $300,000 under the Wrongful Death Act for the loss of his father's society.

The defendant has vigorously attacked the jury's verdict and has filed motions seeking to have this Court set the verdict aside and either enter judgment for defendant, grant defendant a new trial, or order plaintiff to remit a portion of the damage award. Two primary arguments have been advanced by defendant in support of her motions. She contends first that the jury was not instructed correctly on the proper standard to apply for an award of punitive damages. Second, she argues that no cause of action exists under the Illinois Wrongful Death Act for loss of a parent's society by a child.

*Punitive Damage Instructions*

The Court instructed the jury that under the Civil Rights counts of the complaint, the defendants were obligated to refrain from wilful and wanton conduct which would endanger the safety of the deceased. "Wilful and wanton" was defined as "utter indifference or conscience (sic) disregard for the safety" of another.

The Court further instructed the jury that, in order to establish the civil rights violations, plaintiff had the burden of proving, *inter alia,* that the defendant's actions made it highly foreseeable that Clyde Davis would be physically attacked or killed and that defendant's conduct was grossly negligent or an egregious failure to protect the deceased. "Gross negligence" was defined as a callous indifference or thoughtless disregard for the consequences of one's act or failure to act. "Egregious failure to protect" was defined as a flagrant or remarkably bad failure to protect. Moreover, the Court's punitive damage instruction provided that the jury could award exemplary damages in order to punish a wrongdoer for extraordinary misconduct and to serve as an example or warning to others. The jury was instructed that it could award punitive damages if defendant's conduct amounted to reckless or callous disregard of, or indifference to, the rights or safety of others.

These instructions were taken virtually verbatim from an opinion of the United States Court of Appeals for the Eighth Circuit, *Wade v. Haynes,* 663 F.2d 778 (8th Cir.1981), wherein the Eighth Circuit approved their use in a factually similar case.

Defendant argues that these instructions failed to differentiate between the nature of the conduct necessary to establish a civil rights violation and that necessary to support an award of punitive damages. Defendant's contention is that a higher standard than "reckless or callous disregard" for the safety of others is required for a finding that punitive damages are merited where the standard for liability for compensatory damages is that of recklessness.

■ The United States Supreme Court, however, recently decided otherwise. In *Smith v. Wade*, —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Court affirmed the Eighth Circuit's decision in *Wade v. Haynes, supra*, and held that reckless or callous disregard for a person's rights, as well as intentional disregard thereof, is sufficient to support a jury's determination that punitive damages should be awarded. —— U.S. at ——, 103 S.Ct. at 1637. The Court rejected defendant's argument there that the deterrent and punitive purposes of punitive damages are served only if the threshold for punitive damages is higher than the underlying standard of liability in the first instance. *Id.* The Court specifically held that even when the underlying standard of liability for compensatory damages is one of recklessness, that same threshold applies to permit a jury to assess punitive damages in a § 1983 action. *Id.* at ——, 103 S.Ct. at 1639. Moreover, the Court noted that reckless misconduct would dissipate a defendant's qualified immunity. *Id.* Thus, defendant's argument that the jury was incorrectly instructed on the appropriate standard to be applied to the punitive damage question must be rejected.

■ Another issue which concerns the Court in regard to the award of punitive damages is the relationship between the size of the award and defendant's financial worth. Although counsel for the defense has made passing reference to the problem, the parties have not briefed this issue. However, because of the size of the punitive damage award, the Court feels compelled to raise the matter *sua sponte.*

■ The purpose of a punitive damage award is to punish a wrongdoer. Additionally, punitive damages serve to deter others who might commit a similar wrong. *Shimman v. Frank*, 625 F.2d 80, 101–102 n. 44 (6th Cir.1980); *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978); *Bucher v. Krause*, 200 F.2d 576, 578, 587 (7th Cir. 1953). Although the purpose of punitive damages is to punish and deter, such damages are not intended to destroy the de-

fendant. *Shimman v. Frank*, 625 F.2d 80, 101 (6th Cir.1980).

■ In *Harris v. Harvey*, 605 F.2d 330 (7th Cir.1979), *cert. denied*, 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980), a jury assessed $200,000 in punitive damages against a county judge who had seriously abused his judicial power because of racial animus. Although the defendant did not attack the size of the award on appeal and despite the defendant's failure to introduce evidence at trial of his financial worth, the United States Court of Appeals for the Seventh Circuit directed the trial judge to consider reducing the $200,000 award if the defendant could show financial hardship. Accordingly, in light of defendant's employment as an information clerk with the Decatur Police Department and, in light of the magnitude of the punitive damage award in this case, a hearing will be held on Thursday, August 4, 1983, at 10:00 a.m., to determine defendant's financial worth. Thereafter, the Court will determine whether a reduction in the amount of punitive damages is mandated.

### Loss of Society

■ As noted above, defendant's other primary contention is that Illinois does not recognize a cause of action for loss of a parent's society by a child. Although there are conflicting authorities on this issue, this Court concludes that Illinois does indeed recognize a cause of action on behalf of a child for the loss of a parent's society when the parent dies due to the wrongful act of another.

In *Allendorf v. Elgin, Joliet and Eastern Railway Co.*, 8 Ill.2d 164, 179–80, 133 N.E.2d 288 (1956), the Illinois Supreme Court recognized that the loss of a decedent's felicity, care, attention and guidance as a father was compensable as an element of damages in an action brought in part on behalf of his children. Two years later, the court in *Hall v. Gillins*, 13 Ill.2d 26, 147 N.E.2d 352 (1958), recognized a cause of action on behalf of a child for the loss of the support, companionship, guidance, ad-

vice and affection of a father under the Wrongful Death Act. In that case, the widow and child of the deceased attempted to bring a common law cause of action for "destruction of the family unit" in an attempt to avoid the limit imposed on recoverable damages by the Wrongful Death Act in effect at that time. Ill.Rev.Stat. ch. 70 §§ 1, 2 (1957). In refusing to recognize a separate common law action, the court stated as follows:

> The gap between the "damages for destruction of the family unit" that plaintiffs claim, and the "just compensation with reference to the pecuniary injuries resulting from such death" that the statute allows, is not as wide as the words used would suggest. The term "pecuniary injuries" has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case. Each plaintiff alleges deprivation of support as well as deprivation of the companionship, guidance, advice, love and affection of the deceased.... The broad scope of the phrase "pecuniary injuries" is further shown by those cases which hold that in the case of a child the jury may taken (sic) into account the loss of instruction and moral, physical and intellectual training brought about by the death of the father. *Goddard v. Enzler*, 222 Ill. 462 [78 N.E. 805]; *Ittner Brick Co. v. Ashby*, 198 Ill. 562 [64 N.E. 1109]; *Illinois Central Railroad Co. v. Weldon*, 52 Ill. 290.

Most recently, the Illinois Supreme Court, relying on *Hall v. Gillins*, 13 Ill.2d 26, 147 N.E.2d 352 (1958) and *Allendorf v. Elgin, Joliet & Eastern Railway Co.*, 8 Ill.2d 164, 133 N.E.2d 288 (1956), recognized that Illinois law provides a cause of action for a child's loss of society when a parent is killed. *Elliott v. Willis*, 92 Ill.2d 530, 535–37, 65 Ill.Dec. 852, 855–56, 442 N.E.2d 163, 166–67 (1982). Having recognized the felicity and care of a parent to be capable of evaluation as "pecuniary injuries" under the Wrongful Death Act, the court felt compelled in *Elliott* to hold that the loss of society of a spouse is equally compensable as "pecuniary injuries." *Id.* at 537, 65 Ill.Dec. at 856, 442 N.E.2d at 167. The court specifically found IPI Civil No. 31.07(2), which excluded loss of society by the widow and next of kin as an element of damages, to no longer be valid. *Id.* at 539, 65 Ill.Dec. at 857, 442 N.E.2d at 168.

Further support for plaintiff's position can be found in the introduction to the Illinois Pattern Jury Instructions on Wrongful Death, IPI Civil (2d ed.) § 31.00 at 161. " 'Pecuniary injuries' has been interpreted to include injury to the support, guidance, companionship, advice, and affection received by the wife and children of the deceased," relying on *Hall v. Gillins, supra*. Moreover, even prior to the court's holding in *Elliott*, the notes following IPI Civil No. 31.07 provided that

> [b]ecause children can recover for loss of their father's moral training, instruction and superintendence of education, IPI 31.04, element 4, the bracketed phrase referring to next of kin should not be used in connection with children because 'society' overlaps the elements listed in element 4 of IPI 31.04 to such a marked extent.

Additionally, the comment to IPI Civil No. 31.01 indicates that a presumption of loss applies even where the decedent was an adult and the next of kin are also adults.

Defendant relies on several Illinois Appellate Court cases as support for her position that plaintiff has no cause of action for loss of his father's society. All of the cases are distinguishable. In *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1st Dist.1980), the plaintiff daughter sued for loss of her father's society after he was negligently injured by a third person. The father did not die. Although courts have been slow to recognize a cause of action for loss of society when a parent is injured, many wrongful death statutes allow recovery for such losses when death results. *See* Note, *The Child's Right to Sue for Loss of a Parents Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U. L.Rev. 722, 723 n. 14 (1976). Moreover, the

court in *Koskela* did not mention *Hall v. Gillins* and it was decided prior to *Elliott v. Willis.*

In *Mueller v. Hellrung Construction Co.,* 107 Ill.App.3d 337, 63 Ill.Dec. 140, 437 N.E.2d 789 (5th Dist.1982), the Court, relying on *Koskela,* held that a minor child has no cause of action for loss of parental companionship and society when his parent is negligently injured by a third party. However, the *Mueller* court implicitly recognized that such a cause of action existed in the event a parent died. In *Mueller,* the plaintiff argued that it violated the equal protection clause to allow a minor child to recover for the loss of consortium, companionship, society and affection of its parents if the parent dies of negligently inflicted injuries but to deny that same child a cause of action if the parent survives. 107 Ill. App.3d at 339, 63 Ill.Dec. 140, 437 N.E.2d 789. The court rejected this argument, finding the class of beneficiaries under the proposed common law cause of action to be dissimilar from the class of beneficiaries under the Wrongful Death Act. In other words, the court found no equal protection violation in allowing the "surviving spouse and next of kin" to recover for loss of consortium under the Wrongful Death Act while disallowing minor children a cause of action for loss of consortium when the parent is merely injured. Moreover, the court relied on cases which recognized a distinction between the classes on the basis that surviving children are totally deprived of parental consortium while children of an injured parent are merely partially deprived. The *Mueller* case, as discussed above, supports a finding that a child of a deceased parent has a cause of action for loss of his parent's society under the Wrongful Death Act in Illinois.

Defendant also relies on two post-*Elliott* cases as support for her position that Illinois does not recognize a cause of action for loss of society by a child after the death of a parent. In *Bullard v. Barnes,* 112 Ill.App.3d 384, 68 Ill.Dec. 37, 445 N.E.2d 485 (4th Dist.1983), *leave to appeal granted,* No. 58–203 (May 31, 1983), the parents of a seventeen-year-old youth brought a wrongful death action after their son was killed in an automobile accident. The trial court had instructed the jury that in determining the pecuniary loss to the parents, the jury could consider the parents' loss of society with the decedent. The Illinois Appellate Court for the Fourth District reversed this aspect of the case, finding the Illinois Supreme Court's opinion in *Elliott v. Willis* to be limited to loss of consortium between spouses. Thus, the court held that loss of society of a child is not an element of damage under the Wrongful Death Act. *Id.* at 389, 68 Ill.Dec. at 42, 445 N.E.2d at 490.

In *Kaiserman v. Bright,* 61 Ill.App.3d 67, 18 Ill.Dec. 108, 377 N.E.2d 261 (1st Dist.1978), the court held that a parent could not recover for the loss of a child's society under the Wrongful Death Act. In reaching this conclusion, the supreme court in *Elliott* pointed out that the court in *Kaiserman* had erroneously relied on *Zostautas v. St. Anthony De Padua Hospital,* 23 Ill.2d 326, 178 N.E.2d 303 (1961) for the proposition that loss of society could not be included in pecuniary injuries under the Wrongful Death Act. *Elliott,* 92 Ill.2d 537, 65 Ill.Dec. at 856, 442 N.E.2d at 167. The Illinois Supreme Court in *Zostautas* had merely held that damages for mental anguish or bereavement are not recoverable in a wrongful death action. The *Elliott* court noted that bereavement was sufficiently distinct from loss of society and companionship such that the latter could be remedied though the former could not. 92 Ill.2d 537, 65 Ill.Dec. at 856, 442 N.E.2d at 167.

Although the court in *Bullard* acknowledged that the *Kaiserman* decision had been criticized in *Elliott,* it concluded that *Kaiserman* had not been overruled. The *Bullard* court went on to hold that there is a qualitative difference between the society of a spouse and that of a child, and that "society" was inherent in the marital relationship. 112 Ill.App.3d at 389, 68 Ill.Dec. at 42, 445 N.E.2d at 490.

Obviously, a basic distinction between *Bullard* and the present case is that here a child is seeking damages for loss of a parent's society. *Bullard* involved a parent seeking damages for loss of a child's society. The Illinois Supreme Court in *Elliott v. Willis* found that a spouse could sue for the loss of his or her spouse's society under the Wrongful Death Act, particularly in light of Illinois Supreme Court cases holding that a child could recover for loss of a parent's society. I believe that the *Bullard* court misconstrued the Illinois Supreme Court's view of *Kaiserman*. The supreme court in *Elliott* clearly felt that *Kaiserman* had been erroneously decided.

In any event, this Court need not decide whether *Bullard* correctly determined that a parent cannot recover under the Wrongful Death Act for the loss of a child's society. Rather, the Illinois Supreme Court in *Elliott* and the cases relied on therein has determined that a child does have a cause of action under the Wrongful Death Act for the loss of a parent's society.

The last case defendant relies on is *Trotter v. Moore*, 113 Ill.App.3d 1011, 69 Ill. Dec. 653, 447 N.E.2d 1340 (2d Dist.1983). That case also involved an action by parents under the Wrongful Death Act for the death of a child. The trial court refused to instruct the jury that loss of decedent's society could be considered as an element of pecuniary injuries. Although the appellate court affirmed that decision, its opinion in fact supports this Court's determination that a child may recover for the loss of a parent's society under the Wrongful Death Act.

The *Trotter* court acknowledged that

The supreme court has repeatedly held that a jury may award damages for such intangibles as the decedent's felicity and care as a father.... The court in *Elliott* thus concluded that if a child's loss of felicity and care of a father are capable of evaluation as pecuniary injuries, it was compelled to conclude that the companionship and conjugal relationship of a spouse are equally compensable as pecu-

niary injuries. 92 Ill.2d 530, 538 [65 Ill. Dec. 852, 442 N.E.2d 163].

We observe that if felicity and companionship, *i.e.*, loss of society as between a decedent and his child ... or a decedent and his spouse, ... are capable of evaluation, the damages would be no less capable of evaluation where the decedent was a child and the survivors were the next of kin.

*Id.* 69 Ill.Dec. at 656, 447 N.E.2d at 1343. Despite the court's inability to find a logical qualitative difference between the loss of a child's society by a parent and the loss suffered when a spouse dies and leaves surviving a spouse or next of kin, the court nevertheless followed *Bullard* and held that a jury may not consider the loss of a child's society as a pecuniary injury under the Wrongful Death Act. However, as the above-quoted language demonstrates, the court recognized that a cause of action existed for the loss of a parent's society by a child.

■ One final point remains to be made. Defendant contends that this Court erred in failing to instruct the jury on the eight factors contained in IPI Civil No. 31.04 in determining pecuniary loss. There was never any contention made that the deceased contributed to the financial support of his son. The notes on use of instruction 31.04 indicate that only those factors having a basis in the evidence should be used. Accordingly, the only damages recoverable were those incurred by the loss of decedent's society and the jury was so instructed. The matters which defendant contends negatived plaintiff's losses were matters for argument and defendant so utilized them. However, where the jury was instructed that the plaintiff's only pecuniary loss was that of decedent's society, defendant cannot establish any prejudice from such an instruction.

The Court has considered the various other points raised by defendant and is unconvinced of their merit. Accordingly, for the reasons stated herein, the post-trial motions filed by defendant are denied, ex-

cept insofar as pertains to punitive damages.