MARJORIE LONG, Plaintiff-Appellee, v. YELLOW CAB COMPANY, Defendant-Appellant.

First District (1st Division) No. 83—2145

Opinion filed September 30, 1985.

Jesmer & Harris, of Chicago, for appellant.

Perz & McGuire, of Chicago, for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Marjorie Long, brought an action against the defendant, Yellow Cab Company and Michael Asante, alleging injuries suffered while she was a passenger in a taxicab owned by defendant and driven by Asante. After trial, the jury returned a verdict against defendant for $108,700. On appeal, defendant argues: (1) plaintiff improperly presented evidence regarding the occurrence of the collision which was irrelevant and prejudicial; and (2) misconduct by plaintiff's counsel prejudiced defendant and resulted in an excessive verdict.

We affirm.

Plaintiff called Michael Asante as an adverse witness. He testified that on November 1, 1977, he drove a Yellow taxicab. While traveling on Kennedy expressway, with plaintiff as a passenger, the taxicab struck a concrete wall. After the collision plaintiff appeared to be in pain. The witness tried to help plaintiff, but she asked not to be touched. Defendant objected to counsel's question regarding the degree of pain plaintiff seemed to have experienced. The objection was sustained, and the jury was admonished to disregard the question. An ambulance arrived at the scene within a few minutes. The plaintiff was taken out of the taxicab in a stretcher and was taken to a hospital. Immediately after the witness completed his testimony, and while in the presence of the jury, plaintiff's counsel moved to have Asante dismissed as a defendant. Defense counsel moved for a mistrial. Defendant's motion was denied.

Dr. Jonathan Bock-Seng Po testified by evidence deposition that he

is a radiologist practicing in California. In October of 1977 plaintiff was referred to him by Dr. Norman Marback. X rays of plaintiff's back taken in October showed "no fractures and no other abnormalities ***." However, X rays of plaintiff's back taken on November 1, 1977, after the instant collision, showed a fracture of a vertebra which appeared to be of recent origin.

Dr. Norman Marback testified by evidence deposition that he is a chiropractic orthopedist practicing in California. He treated plaintiff after the accident on November 1. Plaintiff complained of stiffness in her lower back, throbbing, spurts of pain, spasms, shooting pain in her right leg and weakness in her hands. He treated plaintiff with ultrasound, massage, and manipulation of her neck.

Dr. Marback also testified he had initially treated plaintiff on October 11, 1977. On October 6, her car had been hit in the rear by another car. Plaintiff particularly complained of pain of her neck. However, in her medical history, plaintiff also indicated she was experiencing pain in her back. Dr. Marback ordered X rays be taken of plaintiff's cervical spine, thoracic spine, lumbosacral spine, and pelvis. The X rays were normal. Dr. Marback diagnosed that plaintiff received a cervical sprain in the October 6 accident. He treated plaintiff with manipulation of her neck.

Dr. Marback examined plaintiff again on January 18, 1978. After the examination, and after reviewing the X rays taken of the plaintiff immediately after the November 1 accident, Dr. Marback confirmed the diagnosis of Dr. Po that plaintiff suffered a fractured vertebra in the November accident. Furthermore, Dr. Marback concluded: that plaintiff will continue to have problems in her back; that she was probably in pain at the time of the trial; that there will be exacerbations of her injury; and that her condition will probably be permanent.

Dr. Samuel Gerber, a radiologist at Northwest Hospital, also testified. He identified the X rays taken of plaintiff at Northwest Hospital on November 1, 1977. Dr. Gerber stated that because of the location of plaintiff's vertebral fracture, and her general physical condition, it would be "almost impossible" for a chiropractor to have caused plaintiff's fracture through manipulation.

Dr. Gerber also testified he examined X rays taken of plaintiff on January 28, 1983. His diagnosis was that plaintiff was developing "post traumatic arthritis" in the fractured vertebra. Dr. Gerber's prognosis was that the arthritis would cause plaintiff pain, that the arthritis was permanent, and that the arthritis was progressive. He indicated that the pain would be exacerbated if plaintiff were to lift weights. Plaintiff's attorney asked the witness whether the pain would

interfere with picking a child out of a crib. Defendant's objection to the question was sustained and the jury was admonished to disregard the question. Later, defense counsel moved for a mistrial based on that question. The motion was denied.

Plaintiff testified she was 28 years old at the time of the accident. Before the accident she was active in sports. She played tennis regularly and played in tournaments. She also ran and rode her bicycle regularly. During her testimony, defense counsel moved for a mistrial because plaintiff was crying in front of the jury. The trial judge denied defendant's motion but asked the plaintiff to restrain herself.

Plaintiff was wearing a rain coat during her testimony which she stated she was wearing because the cold hurt her back.

Plaintiff further testified that on November 1, 1977, she entered a yellow taxicab in front of her hotel to go to an address on Higgins Road. The driver asked her the fastest route to her destination. After plaintiff told the driver she did not know, he asked her to look up the address in a book. She moved to the center of the back seat of the taxi to converse with the driver.

While traveling on the Kennedy Expressway, the driver changed lanes. The taxi began to spin counterclockwise and struck an abutment. Plaintiff testified she was thrown to the left side of the taxi and then to the right side of the taxi. She felt "incredible pain" when she struck the right side of the taxi and her legs felt numb. She remained in the hospital for nine days.

Plaintiff also testified she was required to wear a brace continually through March of 1978. She wore the brace intermittently for another year. She does exercises recommended by her doctor to alleviate pain in her back. Her doctor informed her that she should do the exercises for the rest of her life. The judge sustained defendant's objection and admonished the jury to disregard plaintiff's answer. Plaintiff also stated that she could no longer play tennis and that running and riding her bicycle cause pain in her back. The plaintiff also said that on the way to the hospital she felt sorry for Asante, and told him the accident was not his fault. Defendant made no objection to that statement.

Dr. Sydney Morgenstern, an orthopedic surgeon, testified he treated plaintiff at Northwest Hospital on November 1, 1977. Plaintiff was complaining of pain and numbness at that time. After he consulted a neurosurgeon about plaintiff, Dr. Morgenstern concluded that the numbness and pain plaintiff was experiencing were caused by a concussion of plaintiff's spinal cord which accompanied the fracture of her vertebra. The effects of the spinal concussion were temporary. Dr. Morgenstern later examined plaintiff on January 24, 1983, and studied

recent X rays of plaintiff's back. While he did not find neurological damage, Dr. Morgenstern indicated that plaintiff was developing arthritis in the injured vertebra. He believed the arthritis is permanent and will cause plaintiff pain.

Plaintiff's attorney made various statements in his closing argument which defendant urges are improper. Included among those statements are: counsel's reference to plaintiff's "spiritual pain"; his suggestion that plaintiff's reaction to her injury to be "Oh God, how can I handle that"; his reference to plaintiff's "new cross" to bear; his statement that the jury could not consider what award they would want if they had been injured as plaintiff; and his statement "the echoes from two thousand years ago are still reverberating in this room. What she told Michael Asante is, 'I forgive you.'" Defendant's objection to each of these comments was sustained, and the court admonished the jury to disregard them. Also, plaintiff's counsel stated that the injury to plaintiff's back would interfere with her rights as a possible future mother. Defendant's objection to that comment was overruled. After plaintiff's closing argument, defendant again moved for a mistrial. The motion was denied.

Initially, defendant argues that because defendant "admitted liability" the evidence regarding the circumstances of the accident was irrelevant and prejudicial to defendant.

In this context, defendant relies on *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485. In *Bullard,* plaintiff's decedent was killed when the car he was driving was forced off the road by a truck driven by defendant. Defendant admitted liability and the only issue at trial was the pecuniary loss resulting from decedent's death. We reversed and remanded, holding that testimony regarding the circumstances of the accident and that defendant left the scene of the accident was irrelevant to the issues at trial and inflammatory. (112 Ill. App. 3d 384, 393.) We find *Bullard* inapposite from the case at bar.

■ We disagree with counsel's assertion that defendant "admitted liability" in the case at bar. Defendant did admit the negligence on the part of Asante and that Asante was the agent of defendant. However, defendant disputed that plaintiff's injury was caused by the November 1 accident. Throughout the trial, defendant tried to establish that plaintiff's injury may have been caused either by the earlier accident or the chiropractic manipulation of plaintiff's back. Under these circumstances, the evidence of the occurrence of the accident and the pain plaintiff suffered immediately after the collision are relevant to the issue of whether injury was in fact caused by the November accident. Furthermore, *Bullard* was a wrongful death case where the ex-

tent of the injury is not at issue. On the contrary in the case at bar the extent of plaintiff's injury is critical to the amount of damages to which she should be entitled. See *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 393.

Defendant also argues that the behavior of plaintiff's counsel, as outlined above, constitutes misconduct which prejudiced defendant and resulted in an excessive award. We disagree.

■■ ■ In the case at bar, the trial court sustained defendant's objections to virtually every question and remark which defendant now alleges were improper. By sustaining defendant's objections and admonishing the jury not to consider the improper statements, the trial court cured the errors, if any, caused by those statements. (*Simmons v. City of Chicago* (1983), 118 Ill. App. 3d 676, 455 N.E.2d 232.) When the trial court sustains objections and instructs the jury to disregard the improper statements, "there is no reason to believe that the jury was prejudiced." (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 258, 451 N.E.2d 1313.) Furthermore, the trial court is in the best place to determine the possible prejudice defendant may have suffered. (See *Bentley v. City of Chicago* (1979), 79 Ill. App. 3d 1028, 398 N.E.2d 912.) By denying defendant's repeated motions for mistrials, the trial court determined that the defendant was not unduly prejudiced.

■ In addition we do not believe the jury award was excessive. The determination of proper damages rests largely within the discretion of the jury, and a reviewing court will set aside an award as excessive only if the award is so large as to " 'shock the judicial conscience.' " *Kosch v. Monroe* (1982), 104 Ill. App. 3d 1085, 1096, 433 N.E.2d 1062, quoting *Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 739, 409 N.E.2d 366.

■ In the case at bar, the record indicates that plaintiff suffered a fractured vertebra in her back, she was developing progressive arthritis in her back, she was forced to wear a brace for a year and a half, she was forced to curtail many of her avocations and other activities, and she was going to experience considerable pain in the future. Furthermore, the defendant did not present any evidence to contradict plaintiff's expert testimony as to the extent of her injuries. Under these circumstances, we cannot say that the jury award of $108,700 shocks the judicial conscience.

For these reasons the judgment appealed from is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.